19308

The STATE, Respondent, v. Gerald ALBERT, Appellant
(184 S. E. (2d) 605)

132

*Messrs. Matthew J. Perry, of Jenkins, Perry & Pride,* of Columbia, *and Fred Henderson Moore,* of Charleston, *for Appellant,* cite:

*Messrs. Daniel R. McLeod, Atty. Gen., and E. N. Brandon, Asst. Atty. Gen.,* of Columbia, and *Leonard A. Williamson, Solicitor,* of Aiken, *for Respondent,* cite:

Nov. 3, 1971.

Moss, Chief Justice.

Gerald Albert, the appellant herein, and thirty-five other persons were indicted by the Grand Jury of Bamberg County and charged with the offense of riot. The indictment charged that Gerald Albert, and his co-defendants, on April 28, 1969:

"did willfully, riotously, routously and tumultuously assemble and meet together and disturb the peace of the State, and being so then and there make great riot, tumult and disturbance, and then and there unlawfully, riotously, routously and tumultously remained and continued together making such noise, tumults and disturbances for a great space of time to the great terror and disturbance of peaceful citizens there residing and passing and repassing; and did commit a felony, to wit, the crime of riot, in that they did willfully, maliciously and unlawfully assemble, being more than three in number, upon the campus of Voorhees College, near the Town of Denmark, in the County of Bamberg, with firearms and deadly weapons, and did riotously, tumultously and violently breach the peace by taking possession with force and violence of the Voorhees College administration building and library, science building, dining hall, and other buildings, and force those persons lawfully entitled to be present therein to depart at gunpoint to their terror and to the terror of the people, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

This case came on for trial at the 1970 September term of the Court of General Sessions for Bamberg County. When the case was called for trial, the appellant moved to quash and dismiss the indictment on the ground:

"that it's vague, unconstitutionally vague, indefinite, imprecise, and does not afford or accord the defendant fair notice of what charge he is to meet, and such is violative of

his rights to due process and legal protection afforded him by the Fourteenth Amendment of the United States Constitution."

The motion of the appellant to quash the indictment on the grounds stated was denied. The case was then tried and the appellant was found guilty as charged. He now appeals to this court alleging, (1) error on the part of the trial judge in refusing to quash the indictment on the grounds stated; (2) error in refusing to enter a judgment of acquittal and a verdict of not guilty; and (3) error in the admission of certain exhibits.

The first question for determination is whether our common law definition of riot is unconstitutionally vague.

The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. The primary issues involved  are whether the provisions of a penal statute are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties to apprise judge and jury of standards for the determination of guilt. If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional. *State v. Zwicker,* 41 Wis. (2d) 497, 164 N. W. (2d) 512, 32 A. L. R. (3d) 531.

Our court has defined riot as follows:

"A riot is defined to be tumultuous disturbance of the peace by three or more persons assembled together of their own authority, with the intent mutually to assist each other against anyone who shall oppose them, and putting their design into execution in a terific and violent manner, whether the object was lawful or not." *State v. Connolly,* 3 Rich. 337; *State v. Brazil,* Rice 257; *State v. Cole,* 2 McCord 117; *State v. Johnson,* 43 S. C. 123, 20 S. E. 988; and *State v. Greene,* 255 S. C. 548, 180 S. E. (2d) 179.

In the case of *Abernathy v. Conroy,* 4 Cir., 429 F. (2d) 1170, the plaintiff asserted that the South Carolina common law definition of riot offends the First and Fourteenth Amendments of the Constitution because of vagueness. The Fourth Circuit Court of Appeals rejected this contention and held that the crime of riot as defined in our cases is not unconstitutionally vague. We cited the *Abernathy* case with approval in *State v. Greene, supra.* We conclude that there is no merit in the appellant's contention that our common law definition of riot is unconstitutionally vague.

The next question for decision is whether the trial court erred in refusing to grant the motion of the appellant for a directed verdict of not guilty.

In deciding whether the court erred in not directing a verdict in favor of the appellant, we must view the testimony in the light most favorable to the State. When a motion for a directed verdict is made, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Rayfield,* 232 S. C. 230, 101 S. E. (2d) 505; *State v. Hyder,* 242 S. C. 372, 131 S. E. (2d) 96; *State v. Wells,* 249 S. C. 249, 153 S. E. (2d) 904; and *State v. Jordan,* 255 S. C. 86, 177 S. E. (2d) 464.

Voorhees College is located at Denmark in Bamberg County. On April 28, 1969, at noon, several armed persons entered the administration and library buildings of the college and directed the staff to leave the buildings, stating that they were being "taken over." Staff personnel and students left the buildings as directed and remained away. These armed persons remained in the library-administration build-

ing for approximately 28 hours after the buildings were taken over.

On April 29, 1969, Chief J. P. Strom of the South Carolina Law Enforcement Division, with approximately 100 policemen and 200 national guardsmen, surrounded the buildings occupied by the armed persons and speaking with the aid of a megaphone, read a proclamation from the Governor, declaring a state of emergency, and giving the group 30 minutes to vacate the building and submit to arrest. The armed students vacated the buildings as requested.

Mildred Bracey, Secretary to the President of Voorhees College, testified as to how the buildings were occupied by the armed students. She stated that she was at her desk in the office of the president and we quote her testimony as follows:

"Q. Tell us what occurred at that time?
"A. A young man came into the office.
"Q. What did he do?
"A. He pointed a gun at me.
"Q. And were you given any instructions or orders?
"A. Yes, I was told to get out of the building.
"Q. Did you immediately get out?
"A. No.
"Q. Then what happened?
"A. He cocked the gun and then I got out."

Claude Green, Librarian at Voorhees College, testified that at about noon on April 28, 1969, he was in his office and saw a young man come in with a rifle or a gun. He said that he got up from his desk and went to tell the young man to leave but he "told me that I had to leave my office and the building due to the fact that it was being taken over." He further testified that the front of the library was completely glass and such was covered up with newspapers, pamphlets and posters.

There is testimony that due to the situation and the disorder existing at Voorhees College, that buses were made

available for the students, who were not violating any law, to go to their respective homes. Many of the students took advantage of this arrangement and did go to their homes in various parts of the State and beyond.

There is testimony by one Thurston DeLaine, Director of Institutional Research and Planning at Voorhees College, that the Administrative Council of the college met on April 28, 1969, and he was directed to go to the occupied buildings for the purpose of ascertaining what had happened and to make an effort to set up a meeting with the students. He testified that he went to the library and administration buildings and that there were approximately fifty students gathered at the front of the buildings. He communicated with a student by the name of Cecil Raysor. The council prepared a memorandum for delivery to the students in the library-administration building, such memorandum advised the students that they were in violation of the law and of school policy and directing them to stop their activities and surrender the buildings being held by them. This memorandum was delivered by DeLaine through a window of one of the buildings to James Eppes, a student, who was inside the building with other persons. He testified that when he approached the window to deliver the memorandum "gun barrels pointed in my face."

Virginia McKee, Assistant to the Dean of Students at Voorhees College, testified that she went to the library-administration building and saw Gerald Albert in one of the windows of the library and he had in his hand either a gun or a rifle.

The record shows that a newspaper photographer went to the campus of Voorhees College and took twelve photographs of the library-administration buildings. These photographs show several of the armed persons inside of the building looking out through the open windows. The appellant was identified by several witnesses as being one of the persons inside of the library building, standing in a window

thereof with a rifle or gun in his hand, such being pointed towards the outside, and with a bullet belt around his neck. These witnesses identified several other persons in the photographs who were occupying the building.

This record shows that a group of at least seven persons took possession of the library-administration building of Voorhees College at gun point and forced those lawfully present therein to leave. This conduct was a tumultuous disturbance of the peace and was accomplished in a violent manner.

The appellant contends that no tumultuous conduct or violence was shown to have been committed by him. The holding of a building at gunpoint is, in our opinion, "tumultuous and violent." The specific acts of the others must be attributed to the appellant since all were acting in concert.

It has been held that a participant in a riot in which acts of violence are committed may be held criminally liable even though he is not identified as one of those committing the violent acts. 54 Am. Jur. (2d), Mobs and Riots, Section 20, Page 518. *People v. Moore,* 87 Cal. App. (2d) 753, 197 P..(2d) 835, cert. den., 337 U. S. 915, 69 S. Ct. 1155, 93 L. Ed. 1725.

The appellant also takes the position that no person was harmed or injured in any way, nor was the property of Voorhees College damaged in any way as a result of what the several armed persons did. Personal injury or violence to any individual or damage to property are not essential ingredients of the offense of riot. *Commonwealth v. Hayes,* 205 Pa. Super. 338, 209 A. (2d) 38.

In our opinion, considering all of the evidence, direct and circumstantial, in the light most favorable to the State, such was sufficient to require the submission thereof to the jury. It follows that there was no error on the part of the trial judge in refusing the motions of the appellant for a directed verdict of not guilty.

The next question for determination is whether the trial judge erred in receiving as evidence a memorandum prepared by the Administrative Council of Voorhees College, advising the students that they were in violation of the law and of school policy and directing them to stop their activities and surrender the building being held by them. Copies of this memorandum were delivered by one DeLaine to James Eppes, a student, who was inside the building with other persons. The appellant objected to the admission of this memorandum upon the grounds that it violated the hearsay and the best evidence rule, it contained many conclusions of law rendering it inadmissible and there was no showing that it was personally delivered to the appellant. The trial judge overruled the first three grounds and on the last ground he admitted it "subject to being connected up."

Thereafter, the State moved for an unconditional admission into evidence and the trial judge ruled that it had already been admitted and the appellant could move to strike it if it became irrelevant. Such motion was made and overruled.

All who are present at the commission of any riotous act and actively engage therein are rioters. Generally, an order, directing rioters to disperse, brands those who remain as rioters and causes them, by remaining, to declare their intent to be considered as members of the mob. 77 C. J. S. Riot § 18, p. 429. There is evidence here from which the jury could conclude that there was concert of action on the part of the appellant with others to take over and retain control of the library-administration building at Voorhees College.

We think the memorandum was properly received as evidence because such was delivered to one James Eppes, a co-defendant of the appellant, and because all of the persons within the building were acting in concert with a common intent to take over and retain the possession of the library-administration building against the will of the

college officials and contrary to law. The admission of the memorandum in no way violated the hearsay evidence rule.

The final question for determination is whether the trial judge erred in permitting the introduction into evidence as exhibits, over the objection of the appellant, shotguns, pistols, ammunition and knives. The basis of the objection of the appellant is that these exhibits were not shown to have been in his possession and should have been excluded as irrelevant and prejudical.

The testimony is that the appellant and others took over the library-administration building by the use of guns and there is also testimony that while the appellant and his co-defendants were inside of the buildings there was a display of rifles, guns and ammunition. When the appellant and his co-defendants left the buildings the aforesaid exhibits were found in or in close proximity thereto. These exhibits were relevant to prove that a riot had, in fact, taken place. They were properly admitted relative to the appellant's participation in the riot. The trial judge committed no error in permitting these exhibits to be received as evidence.

We think it proper to point out, as is stated in the brief of the appellant, that Cecil Raysor, Samuel Mintz, Alvin Evans, Oliver Francis, James B. Bryant, James Eppes, and Michael Moore had already been found guilty of riot in a trial held at the 1970 July Term of the Court of General Sessions for Bamberg County. The appellant was separately tried upon the same indictment under which the aforementioned defendants were convicted.

The exceptions of the appellant are found to be without merit and the judgment of the lower court is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.