Beverly OSABUTEY and Ulysses Gaither, Plaintiffs–Appellees,

v.

Larry E. WELCH and C.B. Kearney, Defendants–Appellants.

No. 87–1757.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1988.

Decided Sept. 16, 1988.

---

Frank B. Aycock, III, Charlotte, N.C., for defendants-appellants.

Louis L. Lesesne, Jr. (Gillespie, Lesesne & Connette, Charlotte, N.C., on brief) for plaintiffs-appellees.

Before WIDENER and CHAPMAN, Circuit Judges, and GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

WIDENER, Circuit Judge:

This is an interlocutory appeal from an order of the district court which denied the respective motions for summary judgment made by plaintiffs and defendants.[1] We believe that the defendants acted within the scope of the qualified immunity extended to police officers, and we affirm that portion of the order denying partial summary judgment to plaintiffs. We vacate the order denying summary judgment to Welch and Kearney, and remand with instructions to enter judgment for defendants.

Mrs. Osabutey and Gaither filed an action seeking damages for alleged deprivation of constitutional rights.[2] They moved for partial summary judgment on the issue of liability, choosing to rely entirely upon the depositions of Officers Welch and Kearney. Defendants Welch and Kearney also moved for summary judgment, similarly relying upon the deposition testimony.[3]

On February 21, 1985, Larry Welch and C.B. Kearney were policemen assigned to the Vice and Narcotics Bureau of the Char-

---

1. See *Turner v. Dammon,* 848 F.2d 440 (4th Cir.1988).

2. Plaintiffs claimed violation of their rights "under 42 U.S.C. § 1983, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution".

3. No affidavits were filed by either side in this case. Both sides depend solely on the pre-trial depositions of Welch and Kearney.

lotte, North Carolina, Police Department. Officer Welch testified that on that day, at approximately 11:15 a.m., he received a telephone call from a confidential informant who provided the following information:

[A] Ford Granada [which was red], that had the passenger sidewindow broken out, had plastic on the same, would arrive at 827 Merrimon Ave., at approximately 12:00 o'clock, and in this vehicle it would have a black male that was approximately six-one to six-two, approximately 230 pounds, dark complected, and he would be wearing a cream-colored shirt, blue jeans and white tennis shoes.

\* \* \* \* \* \*

And that this person in this vehicle had cocaine in his possession.

\* \* \* \* \* \*

[T]he informant advised me that they [sic] had observed this black male in possession of approximately an ounce and a half of cocaine, and this black male got in his described vehicle above and did—and was in fact going to [the address].[4] JA at 38, 40.

Welch also testified that the informant advised him that the black male had been observed with the cocaine approximately fifteen minutes before the telephone call, or at about 11 a.m. This informant had provided information to Officer Welch on more than 100 occasions during the three or four years preceding this incident, and was considered reliable.

Welch advised his partner of the tip, and together they drove to the address, a known site for drug trafficking and prostitution. They arrived at the address at about 11:30 a.m. Parked across the street and about half a block away in an unmarked police vehicle, they kept the house under surveillance. At about noon, as scheduled, the vehicle that had been described to Officer Welch arrived at the address. The vehicle fit the description given by the informant in all respects. As soon as the car stopped, a black man, also fitting the description given by the informant, got out from the passenger side and approached the house in a hurried manner. The officers testified that the black male jumped out of the car before the officers had any opportunity to approach the vehicle. A black female remained in the car, in the driver's seat. The presence of the female, plaintiff Beverly Osabutey, was not forecast by the informant.

Welch and Kearney called for a uniformed backup and approached the vehicle, identifying themselves as police officers. They then apprised Mrs. Osabutey of the information related to them by the informant, and announced their intention to conduct a search of both the automobile as well as herself. With Mrs. Osabutey standing outside the vehicle, Kearney and Welch searched the passenger compartment and the trunk. They found a stereo component system in the trunk but no contraband. During the search of the vehicle, Ulysses Gaither, the black male described by the informant, who was the male observed alighting from the car upon its arrival, came out of the house and approached the officers. Welch and Kearney identified themselves and advised Gaither of their intention to search him. After completing the vehicle search, the policemen searched Mrs. Osabutey's purse and conducted a patdown search of her outer garments. Gaither was also subjected to a patdown search. Then, shielded behind the car door from spectator view, Gaither was instructed to loosen his belt and unbutton his pants. While Welch held Gaither's pants up, Gaither pulled his underwear outward, away from his body, in order to permit the officers to conduct a visual check inside Gaither's underwear, the purpose of which was to ascertain if the cocaine had been secreted therein. At no time were Gaither's private parts exposed nor did the officers do anything more intrusive than conduct a visual check. At all times Gaither was shielded from view by all except the officers conducting this

---

**4.** The address appears here as 1827 rather than 827, and appears as 1827 elsewhere in the record. The parties make no issue of this typographical error, and neither do we.

search. No contraband was discovered as a result of these searches.

Meanwhile, Officer J.R. Harding, in uniform, had responded to the call for backup. During the latter part of the incident, Mrs. Osabutey was agitated and exhibited hostility toward the officers. At one point, she moved toward the trunk of the car. Fearful that there might be a concealed weapon therein, Officer Harding approached Mrs. Osabutey, who then struck him on the face with a plug end of the cord of one of the stereo components, inflicting a welt or bruise. Officer Harding then placed Mrs. Osabutey under arrest. Harding is not a defendant in the suit filed by Mrs. Osabutey and Gaither. So, whether or not Harding had probable cause to arrest Mrs. Osabutey is not relevant to this appeal, and we do not consider it further.

The standard to be applied here is one of the "objective legal reasonableness" of official conduct, "assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* — U.S. —, —, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). It is the right that is alleged to have been violated that must be "clearly established." It must be sufficiently clear so "... that in the light of preexisting law the unlawfulness must be apparent." 55 USLW at 5093. Plaintiffs allege that defendants violated their "right to be (a) free from unreasonable searches and seizures; (b) free of summary punishment; and (c) free from the deprivation of liberty without due process." Simply alleging violation of such general rights, however, does not meet the test articulated in *Anderson.* At —, 107 S.Ct. at 3039. Our inquiry is whether it was "clearly established that the circumstances with which ... [Welch and Kearney were] confronted did not constitute probable cause and exigent circumstances." At —, 107 S.Ct. at 3039. As we recently stated, defendants are entitled to "summary judgment unless there is a genuine issue as to whether the defendant in fact commit-

ted a violation of clearly established law." *Turner, supra,* 848 F.2d at 444.

■ Unconstitutional conduct does not by itself remove the immunity. *Giancola v. State of W. Va. Dep't of Public Safety,* 830 F.2d 547, 550 (4th Cir.1987). *Anderson* requires the application of qualified immunity to law enforcement officers who act in ways they reasonably believe to be lawful,[5] even in cases where they reasonably, but mistakenly, believe that probable cause or exigent circumstances exist. — U.S. at —, 107 S.Ct. at 3039. We note here, as did the Court in *Anderson,* that it is frequently difficult to determine whether particular searches comport with the fourth amendment. At —, 107 S.Ct. at 3041; see also *Tarantino v. Baker,* 825 F.2d 772, 775 (4th Cir.1987).

■ We cannot conclude that the conduct of Welch and Kearney contravened any constitutional principles so "clearly established" that they as reasonable officers "would understand that what [they] ... were doing violate[d] that right." At —, 107 S.Ct. at 3041. Officer Welch had received a tip from a known, reliable informant. Subsequent surveillance corroborated every facet of the information given him. The only variance from the information provided by the confidential source, and that an addition, was the presence of the black female in the vehicle. Except for the presence of Mrs. Osabutey, the informant's descriptions of (1) the vehicle; (2) Gaither; (3) Gaither's presence in the vehicle; (4) the destination of the vehicle, i.e., the address; and (5) the time of arrival, were corroborated in every respect. Especially since the officer, Welch, had personally verified all of the information given him by the informant, he could reasonably believe that he had probable cause to arrest the suspects, *United States v. Porter,* 738 F.2d 622 (4th Cir.1984) (en banc), and search the car. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Rather than arresting plaintiffs,

---

**5.** Reasonableness is judged by an objective, not subjective, standard. "The relevant question is ... the objective (albeit fact-specific) question whether a reasonable officer could have be-

lieved ... [the] warrantless search to be lawful, in light of clearly established law and the information the searching officer possessed." — U.S. at —, 107 S.Ct. at 3040.

Welch and Kearney first conducted the searches, which produced no contraband, and thereafter decided not to make an arrest. While fortuitous for the plaintiffs, the decision not to arrest does not extinguish or qualify the reasonable belief, held by the officers, that they were acting within constitutional limits.

■ Welch and Kearney also rely upon exigent circumstances as a basis for conducting the warrantless searches. With respect to the search of the auto, we have already noted the existence of probable cause in support of the search. Additionally, the facts establish that the policemen faced a choice of either acting or risk losing both quarry and contraband. The search of the automobile falls within the automobile exception to the warrant requirements of the fourth amendment. *United States v. Shepherd,* 714 F.2d 316 (4th Cir.1983).

■ Exigent circumstances vary from case to case, and a determination of the issue is of necessity fact-specific. See *United States v. Turner,* 650 F.2d 526, 528 (4th Cir.1981). Although it is tempting, we need not, and do not, decide whether the search of plaintiffs was constitutional. Rather, our inquiry is limited to whether the officers could reasonably believe that their action was permissible within the limits of clearly established constitutional principles. We believe that the exigencies of the situation, coupled with the personal corroboration of a tip from a known and reliable informant, provide sufficient basis for a finding that the officers were acting within the protection of the qualified immunity discussed in *Anderson.*

Accordingly, with respect to the denial of summary judgment for plaintiffs, the district court is affirmed. The order of the district court denying summary judgment to defendants is vacated and the case is remanded with instructions to enter summary judgment for defendants.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.