**GRASS ROOTS ORGANIZING WORKSHOP, (GROW), Plaintiff,**

v.

**Honorable Carroll A. CAMPBELL, Jr., Governor of South Carolina and Chairman of the State Budget and Control Board; Grady P. Patterson, State Treasurer; Earl E. Morris, Jr., State Comptroller General; Rembert C. Dennis, Chairman of the Senate Finance Committee; Robert N. McLellan, Chairman of the House Ways and Means Committee; Jesse A. Coles, Jr., Executive Director; and Richard W. Kelly, Director of General Services, individually and in their official capacity, Defendants.**

Civ. A. No. 3:87–1976–16.

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 10, 1988.

See also, 704 F.Supp. 650.

Robert Guild, Robert L. Hallman, Columbia, S.C., for plaintiff.

William L. Pope, Columbia, S.C., for defendants.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on the defendants' motion for summary judgment. The plaintiff seeks to recover against the defendants under 42 U.S.C. § 1983 for violation of the plaintiff's first amendment rights. The defendants now move for summary judgment, asserting that the defendants are immune from damages liability in their official capacities under the eleventh amendment and in their individual capacities by virtue of legislative and qualified immunity. For the reasons set forth below, the Court grants the defendants' motion in part, holding as a matter of law that the defendants are not liable (1) in their official capacities for any damages award or (2) in their individual capacities for certain of their actions, as set forth below.

The following facts are undisputed. On May 8, 1987, the plaintiff contacted the Division of General Services, a division of the South Carolina Budget and Control Board ("Board"), to obtain permission to erect a fixed sign bearing a political slogan[1] on the State House grounds for the period May 15 through May 29, and was told that a written application would be required. Accordingly, the plaintiff submitted a written application which the defendants received on May 11. By letter dated May 15, the plaintiff was informed that the sign could not be displayed at the desired time because Section 10–1–30 required an application to be submitted thirty days before any intended use of the grounds. The defendants had previously allowed other parties to use the State House grounds for various functions without applying the statutory thirty-day application period. The plaintiff then notified the defendants, by letter dated May 17, that it intended to display the sign from June 10 through June 24. Thereafter, the plaintiff had a sign manufactured for display on the grounds at a cost of $100. On June 10, defendant Richard W. Kelly, in a letter to the plaintiff, denied the application because the Board had adopted a new policy on the previous day prohibiting the display of any unattended fixed signs on the State House grounds.[2] On June 18, members of the plaintiff organization and other individuals assembled on the State House grounds without a permit and displayed the sign the plaintiff had sought to erect.

On July 30, 1987, the plaintiff commenced this action under 42 U.S.C. § 1983 seeking money damages for violation of its right to free expression guaranteed under the first amendment to the United States Constitution, a declaration that Sections 10–1–30 and 10–11–20 of the 1976 South Carolina Code of Laws are unconstitutional on their face and an injunction prohibiting enforcement of those statutes. The plaintiff's claims for declaratory and injunctive relief are no longer at issue.[3]

The plaintiff organization's claim for money damages alleges that the defendants deprived its members of their first amendment rights by (1) denying a permit to display the sign; (2) selectively applying to the plaintiff the unconstitutional thirty-day permit provision in Section 10–1–30; (3) adopting a new policy prohibiting the display of fixed signs on the State House grounds; and (4) threatening to invoke criminal sanctions against the plaintiff's members.

At the outset, it is important to distinguish between two separate but related actions which the plaintiff asserts violated its first amendment rights. First, the plaintiff claims the defendants' selective, content-based enforcement of the thirty-

---

1. The proposed sign was to read: "REMEMBER VIETNAM? KEEP SOUTH CAROLINA NATIONAL GUARD OUT OF CENTRAL AMERICA."

2. The plaintiff alleges it was informed on May 13 that the permit had been approved but was later told, on May 15, that the permit had been "revoked." Complaint ¶¶ 16, 18. The defendants deny that a permit was ever approved and therefore assert it could not have been revoked. Answer ¶¶ 16, 18.

3. Because the challenged statutes are no longer in force, the claim for injunctive relief is moot and, as a consequence, the plaintiff lacks standing to seek a declaratory judgment as to the statutes' facial constitutionality. *See* Order filed November 2, 1988.

day application period and their failure to either deny or grant the permit in a timely manner prevented the plaintiff from exercising its right to timely expression of political views. Second, the plaintiff contends that the defendants unconstitutionally applied the June 9 policy prohibiting all fixed signs to it to deny its pending application.

The Court now considers separately each of the grounds asserted in support of the defendants' motion for summary judgment.

## I.

■ First, the Court addresses the defendants' motion insofar as it seeks summary judgment on the ground of qualified immunity. The defendants assert they are entitled to qualified immunity because their policy prohibiting fixed signs was a reasonable restriction of time, place and manner and therefore permissible under the first amendment. The Court concludes that as a matter of law neither adoption of the policy prohibiting all fixed signs on the State House grounds nor application of that policy to the plaintiff was unconstitutional. Accordingly, the Court holds the defendants may not be held liable for their actions in adopting or applying the June 9 policy. The Court's holding here, however, does not affect the plaintiff's claims based on enforcement of the thirty-day application period or on the timing of the defendant's denial of a permit.

■ The right at issue here is the right of expression guaranteed under the first amendment to the United States Constitution. The first amendment provides in part: "Congress shall make no law ... abridging the freedom of speech...." Passage of the fourteenth amendment extended the scope of the first amendment to protect a citizen's freedom of speech from invasion by the individual states. *See Edwards v. South Carolina*, 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963). The first amendment protects the right of an individual to speak freely, advocate ideas, associate with others and petition his government for redress, and it protects the right of associations to engage in advocacy on behalf of their members. *Smith v. Ar-*

*kansas State Highway Emp. Local 1315*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). As a result of this protection, governmental authority to restrict free expression in a public forum is limited:

> In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which "have immemorially been held in trust for the use of the public, and time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." In these quintessential public forums, the government may not prohibit all communicative activity. For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The state may also enforce regulations of the time, place, and manner of expression which are content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Perry Educational Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983) (citations omitted). The area surrounding the State House is a public forum where a citizen's right of expression may be circumscribed only in conformance with these principles. *See Edwards v. South Carolina, supra.* Thus, any governmental restriction of expression is valid only if it is within the constitutional power of the government, it furthers an important or substantial governmental interest, the governmental interest is unrelated to the suppression of free expression and the incidental restriction on first amendment rights is no greater than is essential to the furtherance of that interest. *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). The Court finds the Board's policy prohibiting all fixed signs on the State House grounds is a

reasonable constitutional restriction of first amendment expression. Accordingly, the Court grants the defendants' motion as it relates to the plaintiff's claim for damages arising from adoption and application of that policy on the ground that the defendants did not deprive the plaintiff of any constitutional right in this regard.

The plaintiff does not dispute the facial validity of the June 9 policy and the Court finds that policy is clearly a constitutional restriction. Because the policy prohibits *all* fixed signs, it is content-neutral.[4] Further, the aesthetic interest advanced in support of this policy is a valid one justifying a reasonable restriction on speech. *See City Council v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (upholding ordinance prohibiting posting of signs on public property); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (upholding ordinance severely restricting location of billboards). Finally, the absolute prohibition of fixed signs is the least restrictive means of preventing the aesthetic harm posed by such signs and therefore "curtails no more speech than is necessary to accomplish its purpose." *Vincent*, 466 U.S. at 790, 104 S.Ct. at 2121; *see also Metromedia, supra.* For these reasons, the Court concludes that the Board's policy prohibiting fixed signs is a reasonable restriction on the manner of expression. Nevertheless, the plaintiff has suggested that, under the facts here, the policy was unconstitutional because (1) it was adopted for the purpose of preventing display of the plaintiff's sign and (2) it was applied retroactively to deny the plaintiff's pending application for a permit. The Court finds neither argument persuasive.

■ A court may not strike down an otherwise constitutional statute "on the basis of an alleged illicit legislative motive." *O'Brien*, 391 U.S. at 383, 88 S.Ct. at 1682. "[C]ourts must 'eschew altogether the "guesswork" of speculating about the motive of lawmakers.' ... Instead, courts

must look only to the face of the regulation and the identifiable interest advanced to justify the regulation." *Wall Distributors, Inc. v. Newport News, Va.*, 782 F.2d 1165, 1170 (4th Cir.1986) (upholding city ordinance restricting display of erotic films in closed booths). Accordingly, this Court may not consider whether the Board may have adopted the May 9 policy in order to prevent the plaintiff from displaying its sign. It is sufficient that the policy is content-neutral and narrowly tailored to the legitimate interest advanced by the defendants.

■ Next, the Court finds no constitutional deprivation in the "retroactive" application of the policy to the plaintiffs. The Court perceives no reason a governmental entity which has authority to impose a constitutional restriction on expression may not do so at any time, restricting all future expressive activities. Courts which have upheld reasonable restrictions on expression have permitted them to be applied to those already engaged in the restricted activity. *See, e.g., Wall Distributors, supra.*

For the foregoing reasons, the Court grants the defendants' motion insofar as it relates to liability arising from adoption or application of the policy prohibiting fixed signs on the State House grounds. By granting this motion, however, the Court does not dispose of the plaintiff's claims relating to the defendants' actions before adoption of the June 9 policy.

■ As the Court earlier observed, the plaintiff has asserted claims unrelated to adoption of the policy prohibiting all fixed signs. Specifically, the plaintiff contends the defendants violated its rights by selectively enforcing a statutory thirty-day application period and by delaying decision on the plaintiff's application for an impermissibly long period. At the time of these alleged deprivations, fixed signs were permitted on the State House grounds. The fact that the defendants could, and subsequently did, prohibit all signs is irrelevant to the constitutionality of their actions in enforc-

---

**4.** The plaintiff does not allege that the policy has been discriminatorily enforced since its

adoption.

ing the thirty-day period and delaying a decision on the plaintiff's application while fixed signs were allowed on the State House Grounds.[5] In deciding whether the defendants are entitled to qualified immunity as to those actions, the determinative issue is not whether the defendants could restrict the manner of the plaintiff's right of expression by prohibiting all signs but whether, without having imposed such an absolute ban, the defendants could permissibly require an application thirty days before the intended erection of the sign and postpone decision on that application for thirty days. *See Lakewood v. Plain Dealer Pub. Co.,* — U.S. ——, ——, 108 S.Ct. 2138, 2147, 100 L.Ed.2d 771, 787 (1988) ("even if the government may constitutionally impose content-neutral prohibitions on a particular manner of speech, it may not *condition* that speech on obtaining a license or permit from a government official in that official's boundless discretion"); *Perry Educational Ass'n v. Perry Local Educator's Ass'n,* 460 U.S. at 45–46, 103 S.Ct. at 955 ("The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place.... Although a state is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum."); *compare Saia v. New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (overturning ordinance prohibiting use of soundtrucks without permit where official was vested with unbridled discretion in issuing permits) *with Kovaks v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (upholding ordinance prohibiting use of soundtrucks altogether). Consequently, the Court cannot now grant the defendants summary judgment on the claims relating to the thirty-day waiting period because the defendants have not addressed whether their actions in that regard were constitutional apart from the Board's June 9 policy.

## II.

Next, the Court considers the defendant's motion insofar as it seeks summary judgment based on legislative immunity. The defendants assert they are entitled to legislative immunity from liability for actions taken in "promulgating rules and regulations" concerning use of the State House grounds. In light of its prior holding, the Court finds it unnecessary to rule on this ground.

█ Legislative immunity shields state officials only from liability for actions performed "in the sphere of legitimate legislative activity." *Lake Country Estates v. Tahoe Planning Agency,* 440 U.S. 391, 406, 99 S.Ct. 1171, 1180, 59 L.Ed.2d 401 (1979); *Supreme Court of Va. v. Consumers Union,* 446 U.S. 719, 731–32, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980); *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951).[6] On the facts here, therefore, legislative immunity is available, if at all, only for actions taken in adopting the June 9 policy prohibiting all fixed signs. The defendants cannot claim such immunity for any unconstitutional enforcement of the thirty-day application period or for delaying decision on the plaintiff's application because those actions were not performed in a legislative capacity. Accordingly, because the Court has already granted summary judgment in the defendants' favor on liability for actions taken in adopting the May 9 policy, the Court need not decide here whether the defendant Board members would be entitled to legislative immunity for those actions.

---

5. The defendants' assertion that "they clearly did not believe that they were violating Plaintiff's alleged constitutional rights", insofar as it relies on the defendants' *subjective* beliefs, is likewise irrelevant. The qualified immunity standard is "one of the 'objective legal reasonableness' of official conduct." *Osabutey v. Welch,* 857 F.2d 220, 223 (4th Cir.1988) (quoting *Anderson v. Creighton,* 483 U.S. 635, ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 530 (1987)). A government official's "'subjective good faith' simply will not be part of the qualified immunity inquiry." *Turner v. Dammon,* 848 F.2d 440, 444–45 n. 3 (1988).

6. The defendants' argument in support of legislative immunity implicitly recognizes this limitation.

### III.

Finally, the Court addresses the defendants' motion insofar as it seeks summary judgment on the plaintiff's claims against the defendants in their official capacities. For the following reasons, the Court grants the motion in this regard.

■ "Official capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978)). Insofar as this suit is brought against the defendant state officials in their official capacities, it is a suit against the State of South Carolina which is immune from damages liability under the eleventh amendment to the United States Constitution unless either Congress abrogates or the State waives the eleventh amendment immunity. *See McConnell v. Adams,* 829 F.2d 1319, 1326–29 (4th Cir. 1988). Congress has not abrogated the states' immunity to suits brought under section 1983. *See Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed. 2d 358 (1979). In addition, the State will be found to have waived this immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974). The Court is not aware of any such waiver by the State of South Carolina. Accordingly, the Court grants the defendant's motion as it relates to eleventh amendment immunity and dismisses the action against the defendants in their official capacities.

IT IS SO ORDERED.