23874

CITY OF BEAUFORT, Respondent v. Karl BAKER, Thomas Anderson, Philip Fregin, John W. Mahan, Henry Dickinson, Sheldon Fair, Charles Spurlock, Joseph Aldrich, George Rioux, Thomas Talbert, Alexander Vigil, Michael Levy, Jordan Enebrad and Kevin Clawson, Appellants.

(432 S.E. (2d) 470)

Supreme Court

*Patrick J. Flynn,* of *Clinical Offices, School of Law, University of South Carolina,* Columbia, *for appellants.*

*William B. Harvey, III,* of *Harvey and Battey,* Beaufort, *for respondent.*

*Patricia L. Quentel,* of *Buist, Moore, Smythe & McGee, P.A.,* Charleston, *Andrew N. Vollmer, Thomas M. Clark, Robert F. Hoyt, Mary C. Manemann,* all of *Wilmer, Cutler & Pickering,* and *Roger Conner* and *Robert Teir,* of *American Alliance for Rights and Responsibilities,* of Washington, DC, *amicus curiae for American Alliance for Rights and Responsibilities* and *Main Street Beaufort, USA.*

Heard Jan 4, 1993.

Decided June 15, 1993.

CHANDLER, Justice:

On appeal is an Order of the Circuit Court affirming Appellants' convictions in the Municipal Court for violations of a local noise ordinance. We affirm.

## FACTS

Appellants are street preachers who, for a number of years, have preached on Saturdays in downtown Beaufort. In so doing, they loudly preach directly in front of business establishments by either standing on the sidewalk or in the bed of a pickup truck.

In October of 1991, Beaufort City Council amended local ordinance § 9-1008 (Ordinance) to read as follows:

Section 9-1008 LOUD AND UNSEEMLY NOISE

(a) It shall be unlawful for any person to willfully disturb any neighborhood or business in the City by making or continuing loud and unseemly noises, or by profanely cursing and swearing, or using obscene language. It shall further be unlawful for any person to willfully disturb any neighborhood or business within the City by the use of words which threaten or tend to threaten or incite physical violence, or which endanger or tend to endanger the health and safety of others within the City.

In adopting this Ordinance, Council followed the language of a Maryland statute which has been upheld by the Maryland Appellate Court. *See Eanes v. State of Maryland*, 318 Md. 436, 569 A. (2d) 604 (1990), *cert. denied*, 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed. (2d) 665 (1991).

On November 2, November 16, November 23, December 14, 1991, and January 4, 1992, Appellants commenced their loud preaching in downtown Beaufort. Because of the excessive noise level, merchants were unable to conduct business.

Police were summoned. After ascertaining that the merchants' complaints were based solely upon noise, they warned Appellants that they were in violation of the Ordinance. Notwithstanding, Appellants continued preaching at the same noise level and were arrested.

On March 9, 1992, Appellant Karl Baker was found guilty by a Beaufort Municipal Court jury for violation of the Ordinance. On March 10, 1992, seven other Appellants waived jury trial and were found guilty in a bench trial. The charges against all remaining Appellants were consolidated, and those Appellants were also found guilty in a bench trial. For each conviction, Appellants were sentenced to 30 days in jail or a fine of $234. All convictions have been consolidated on appeal.

## *ISSUES*
1. Is the Ordinance constitutional as applied to Appellants?
2. Is the Ordinance unconstitutionally vague?
3. Were Appellants proven guilty beyond a reasonable doubt?
4. What is the proper standard of review?

## DISCUSSION

### A. *Freedom of Speech*

Appellants contend that the Ordinance is not content-neutral as applied, thereby infringing upon their freedom of speech in violation of the First Amendment of the United States Constitution and Article I, § 2 of the South Carolina Constitution. We disagree.

The constitutional guarantee to freedom of speech is a valuable right critical to every citizen. We recognize and emphasize here Appellants' unalienable First Amendment right to freedom of expression.

However, this right is not absolute. The State may regulate such protected speech through enforcement of content-neutral, time, place, and manner restrictions which are narrowly tailored to serve a significant governmental interest and leave open ample alternative avenues of communication. *Ward v. Rock against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed. (2d) 661 (1989); *GROW v. Campbell*, 704 F. Supp. 644 (D.C.S.C. 1988).

Here, we hold that the Ordinance withstands constitutional challenge as a valid time, place, and manner restriction. The Ordinance, both on its face and as applied, is content-neutral, regulating speech solely upon the noise generated, rather than the message conveyed. The Beaufort police ascertained that the complaints were based solely on the noise level of the preaching, not the preaching itself. *See Eanes, supra*.[1]

Moreover, the Ordinance is narrowly tailored to serve the City's significant interest of controlling the level of noise in its downtown business area.[2] Although this area serves as a traditional public forum, citizens are entitled to governmental protection from excessive noise: government "ha[s] a substantial interest in protecting its citizens from unwelcome noise." *Ward, supra*, 491 U.S. at 796, 109 S.Ct. at

---

[1] The majority has no quarrel with *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed. (2d) 697 (1963), cited by the Dissent. However, *Edwards* involved a denial of peaceful assembly and not, as here, a loud and disruptive activity. Moreover, this action derives from the enforcement of a legislative ordinance; *Edwards* did not.

[2] The Dissent infers that the majority's reliance upon *Eanes* is misplaced in that the protests in *Eanes* occurred in a residential area. This eschews the fact that *Eanes* involves an area on a "congested, one-way, two-lane thoroughfare" through the city which is primarily a business section.

2756, 105 L.Ed. (2d) at 678 [*quoting City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed. (2d) 772 (1984)].

Further, the area merchants in downtown Beaufort are captive audiences in their businesses, unable to transact business or escape from the excessive noise. "[A] captive audience that is entitled to protection may exist outside the home. . . . The principle is grounded on the concept of privacy. . . . Although that protection is most often extended to those within their homes, it may be extended to any situation in which privacy interests [are] substantially threatened because individuals cannot escape bombardment of their sensibilities." *Eanes, supra*, 569 A. (2d) at 612 [internal quotations omitted].

We reject Appellants' contentions that the Ordinance is not narrowly tailored because it does not provide for a decibel-level standard but, rather, is dependent upon complaints from the citizens.

> Since the character of open public places may differ widely, one from another, only a flexible approach to volume control can adequately serve the myriad circumstances which the State can legitimately regulate. As we have pointed out, it is the particular circumstances that render a loud communication unseemly or unreasonable, and hence subject to time, place, and manner regulations.

*Eanes, supra*, 569 A. (2d) at 613.

While we note that although the Ordinance must be "narrowly tailored," it need not be the least intrusive means of serving the government's interest of controlling noise. *Ward, supra; City of Madison v. Baumann*, 162 Wis. (2d) 660, 470 N.W. (2d) 296 (Wis. 1991).

Finally, Appellants' opportunity to convey their religious message is not proscribed by the Ordinance. Numerous alternative avenues of communication are available, including passing out leaflets or preaching at a lower volume. Indeed, Appellants acknowledged these alternatives but refused to utilize them.[3]

---

[3]From a reading of the Dissent, one would perceive that the Appellants here were acting in a passive, nondisruptive manner while law enforcement was responding in an overreactive, aggressive manner. The record clearly refutes this, showing that Appellants' conduct, by their own admissions, was quite disruptive.

## B. *Vagueness*

Appellants argue that the terms "loud and unseemly" are vague in that there are no standards in the Ordinance to reveal how these terms are to be interpreted or enforced. We disagree.

In determining whether a statute is vague, we have held:

> The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. The primary issues involved are whether the provisions of a penal statute are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional.

*State v. Albert*, 257 S.C. 131, 134, 184 S.E. (2d) 605, 606 (1971) (held common law definition of riot not unconstitutionally vague).

In *Eanes* the Maryland court[4] examined the terms "loud and unseemly" and concluded that they are not unconstitutionally vague:

> In similar fashion, we here apply normal meanings to words of common understanding and conclude that speech that is so unreasonably loud as to unreasonably intrude on the privacy of a captive audience may be punished. We hold that the words 'loud and unseemly,' so construed, give sufficient notice of what conduct is penalized. 'Unseemly' modifies 'loud' and means 'unreasonably loud in the circumstances.' That is clear enough. The ob-

---

[4] The Maryland statute is essentially the same as the Ordinance in question here. It reads:

> Any person who shall . . . willfully disturb any neighborhood in such City, Town or County by loud and unseemly noise, or shall profanely curse and swear or use obscene language upon or near any street or highway within the hearing of persons passing by or along such highway . . . shall, upon conviction, be sentenced to a fine of not less than $1.00 and not more than $500.00 or shall be subject to imprisonment for not more than thirty (30) days. . . .

jective 'reasonable' test is used in many areas of the law as an appropriate determinant of liability and thus a guide to conduct.

*Eanes, supra,* 569 A. (2d) at 616 (Footnotes omitted). *See also Grayned v. Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed. (2d) 222 (1972); *City of Madison v. Baumann, supra.*

Here, adequate notice was first afforded Appellants. Despite the notice that their preaching was too loud, they refused to lower the volume. Significantly, Thomas Anderson, himself an Appellant, admitted that the preaching was so loud that merchants within their businesses could have felt the noise was excessive.

We hold the Ordinance is not unconstitutionally vague, given the language of the Ordinance and Appellants' willful violation.

### C. *Sufficiency of Evidence*

Appellants contend the evidence was insufficient to prove a violation of the Ordinance beyond a reasonable doubt. We disagree.

The record clearly demonstrates that Appellants, prior to arrest, received warnings that their preaching was excessively loud and in violation of the Ordinance. Despite the warning, Appellants, in each instance, continued to preach at the same volume, for which they were subsequently arrested.

Moreover, the jury, by way of a videotape of the preaching, was able to sense the actual noise level. It was within the province of the fact finder, jury or judge, to review this evidence and determine whether a violation of the Ordinance occurred.

Clearly, there was abundant evidence of record to support the convictions.

### D. *Burden of Proof*

This Court has held that a duly enacted ordinance is presumed constitutional; the party attacking the ordinance bears the burden of proving its unconstitutionality beyond a reasonable doubt. *Rothschild v. Richland County Board of Adjustment,* 420 S.E. (2d) 853 (S.C. 1992). This is so even where the ordinance allegedly violates First Amendment rights. *Thomson Newspapers, Inc. v. City of*

*Florence,* 287 S.C. 305, 338 S.E. (2d) 324 (1985). *See also Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed. (2d) 1210, *rehearing denied,* 389 U.S. 894, 88 S.Ct. 12, 19 L.Ed. (2d) 202 (1967) (ordinance would not be presumed void even though its language raised substantial constitutional issues).

Appellants contend this standard should be changed so that the government bears the burden of proving the ordinance constitutional, relying on *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed. (2d) 783 (1986). They were granted leave to argue against precedent.

We adhere to the precedent of *Rothschild* that the burden rests upon the party challenging constitutionality. Appellants' reliance upon *Philadelphia Newspapers* is misplaced. In that case, the United States Supreme Court held that, in a civil defamation suit between two private litigants, the burden was upon the plaintiff to prove defendant's speech was false. *Philadelphia Newspapers* is clearly distinguishable.

Affirmed.

HARWELL, C.J., and MOORE, A.J., concur.

TOAL and FINNEY, JJ., dissenting in separate opinion.

TOAL, Justice:

I must respectfully dissent. The majority, just as the court in Maryland, seems to have lost sight of the fact that the Constitution was written to protect the few from the many. Today, the Court finds that a city noise ordinance which places the test for enforcement in the ear of the complainant is not violative of the First Amendment.

Every Saturday at noon, as they had for almost seventeen years, several local street preachers would take their places on the main street of downtown Beaufort. In a loud, yet unamplified voice, the preachers would preach the word of the gospel for half an hour to an hour. At the time of Baker's arrests in November 1991, he was preaching from either the street or the bed of a pickup truck parked in front of a store. Prior to these arrests, Baker and his fellow street preachers asked the Beaufort law enforcement personnel about what constituted an acceptable noise level. After each arrest, the

preachers would receive various answers, and each time they would return to the main street and resume their preaching.

Time and again the police, after receiving complaints from the merchants, would give the preachers a warning. In spite of this warning, the preachers would again attempt to preach. On each occasion, the preaching continued until the police arrested, handcuffed, and led the preachers, one by one, from the street. This is the very same street which the city uses for parades and other more popular civic activities. It is also a street where vehicles with radios blaring pass unchallenged by the police. It is simply a public street in a commercial district, which possesses all of the characteristics of the quintessential public forum.

The majority relies heavily on the Maryland case of *Eanes v. State of Maryland*, 318 Md. 436, 569 A. (2d) 604 (1990), *cert. denied*, 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed. (2d) 665 (1991). This reliance, however, ignores the great factual difference between the two cases. In *Eanes*, the preaching which took place was outside an abortion clinic, located adjacent to a residential area. The preaching itself was also conducted over an extended number of hours. Here the preaching for one hour or less, which had been the conduct over an extended number of years, was far less intrusive because it occurred on a public street in a commercial section of town. It is beyond my comprehension that this activity could be curtailed in our free society.[1]

During a dark time in our State's history, a large civil rights demonstration took place on the steps of our Statehouse. The assembled multitude was told by the police to disperse, and the crowd responded by singing hymns and listening to a leader preach. Those police warnings were eventually followed by over a hundred arrests. The controlling constitutional law grew out of these arrests and convictions of the participants. n *Edwards v. South Carolina*, 372 U.S. 229, 237, 83 S.Ct. 680, 684, 9 L.Ed. (2d) 697 (1963), the Supreme Court held that the "Fourteenth Amendment does not permit a

---

[1] Majority characterized the setting in *Eanes* as primarily a business section. The cases make a real distinction between residential, mixed-residential, and commercial sections, in the time, place, and manner analysis. Regardless of what the street later "turned into," the defendant in *Eanes* was arrested in a mixed residential area. In this instant case, we are dealing with the main street of Beaufort, the quintessential public forum.

State to make criminal the peaceful expression of unpopular views."[2]

The facts in this case are especially poignant when the language of Edwards is considered:

> [W]e do not review in this case criminal convictions resulting from the evenhanded application of a precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be limited or proscribed. If, for example, the petitioners had been convicted upon evidence that they had violated a law regulating traffic, or had disobeyed a law reasonably limiting the periods during which the State House grounds were open to the public, this would be a different case.

*Id.* at 236, 83 S.Ct. at 684.

Baker and the other "street preachers" engaging in preaching at high noon in the quintessential public forum were arrested under a statute which was not narrowly drawn. The Beaufort ordinance in question, titled "Loud and Unseemly Noise," renders unlawful any activity which "willfully disturbs any neighborhood or business in the City by making or continuing loud and unseemly noises, or by profanely cursing and swearing, or using obscene language." Beaufort local ordinance § 9-1008 (1991). Baker made repeated requests to law enforcement personnel for guidance as to what conduct was limited or proscribed. Unfortunately, the only answers Baker received were vague suggestions that it was either for "the court to decide," or that "it's based on a merchant's complaint." The mere fact that the police department is unable to describe what conduct or noise level is offensive is stark testimony to the vagueness of the ordinance.

This ordinance does not reasonably limit the period of time, but instead attempts to assign some ethereal sound level, as a

---

[2] The majority opinion forwards the notion that a street preacher, using only his natural voice, is louder an and more disruptive than a singing and chanting crowd of over two hundred people. Just as the crowd in *Edwards* had the right to assemble and express their views, the street preachers should be free to do the same. It is illogical to attempt to distinguish *Edwards* on the basis of a legislative ordinance. The unconstitutional infringement of free speech is egregious whether it springs from the common law, state or federal statutory law, or a self-serving municipal ordinance. The majority here makes a distinction without a difference, which in effect partially excises the First Amendment from the United States Constitution.

basis for regulation. To compound the egregiousness of the regulation, the police department acknowledges that the ordinance places in the hands of the complainant the determination of the sound level required for enforcement. There is nothing here which is narrowly tailored to the needs of the community.

The leaders of Beaufort have expressed their concern over the impact street preaching has on the tourist trade. Unfortunately this noble desire to make their guests comfortable has the ignoble effect of punishing the street preachers on the basis of their message. The City has allowed parades and street activities to take place in the same quintessential public forum where the preaching takes place.[3] This is strong evidence that the City is far more lenient on the noise level simply on the basis of the popularity of the activity. A rational commercial-based ordinance should never be allowed to usurp the fundamental right of free speech. It flies in the face of the United States Constitution to arrest the street preacher in a public forum based on the popularity of his message.

Balancing the right to free speech with the right of not having to listen is what leads to regulation of speech. This delicate balance is the basis for restrictions which are narrowly tailored to time, place, and manner. It just seems astounding that an unamplified nonthreatening voice, at noon, on a public street in a commercial district, is speech which can be restricted. The speech itself engenders no fear of immediate harm, it posits no clear and present danger, it merely offends the sensibilities of a few listeners. If the majority allows the many to stifle the message of the few under these circumstances, then it appears that South Carolina is headed back to that darker age characterized by the events leading to *Edwards*.

---

[3] The videotape, which was submitted as a portion of the record, showed that the street preaching was not any more disruptive than the street noises. In fact, portions of th the tape could not be heard for the surrounding traffic. Loud radios and cars without mufflers pervaded the entire area. Moreover, the clear record showed that the street preachers were not aggressive. To posit that the street preachers could avoid arrest by preaching at a lower volume ignores the facts. It is undisputed that the preachers made several attempts to determine from the authorities what sound level was permissible. Each attempt was rebuffed or answered with an arrest. It would appear that the only lower volume which would suffice was actually no volume.

Accordingly, I would reverse the convictions of the street preachers, and hold that Beaufort's "Loud and Unseemly Noise" ordinance is an unconstitutional restriction on the time, place, and manner of free speech.

FINNEY, J., concurs.