John M. ASQUITH, Ricky L. Knowles, Billy D. Randall, Wayne H. Williamson, J. Blake Lindsey, Jeff Attlessey, John Doe, Mary Roe, and others similarly situated, Plaintiffs,

v.

CITY OF BEAUFORT; Colonel Jesse Altman, Jr., Chief of Police; Captain Jefferson Dowling, Sgt. Michael Lee, John Doe, and other unnamed police officers; David Taub, Mayor; Dr. Charles A. Bush, Edie Rogers, Donnie Beer, and Fred Washington, Jr., Members of the

City Council; Dean Hunter, City Manager; all in their official capacities; and Colonel Jesse Altman, Jr., William Rhett, Nancy Rhett, Roger Karr, and Neil B. Lipsitz, in their individual capacities, Defendants.

CALVARY BAPTIST CHURCH, on behalf of its members, and George Daughtey and Richard Simpson, Plaintiffs,

v.

CITY OF BEAUFORT; David Taub, Mayor, Dr. Charles A. "Tony" Bush, Edie Rogers, Donnie Beer, and Fred Washington, Jr., Members of the City Council; Dean Hunter, City Manager; and Colonel Jesse Altman, Jr., Chief of Police, all in their official capacities, Defendants.

William Bradley LINDSEY, through his Guardian ad Litem Jeffrey Blake Lindsey, Plaintiff,

v.

CITY OF BEAUFORT; William R. Neill, Chief of Police; Captain Jefferson Dowling, Officer Brad Payne, and other unnamed police officers; David Taub, Mayor, Dr. Charles A. Bush, Edie Rogers, Donnie Beer, and Fred S. Washington, Jr., Members of the City Council; Dean Hunter, City Manager; all in their official capacities; Defendants.

Civ. A. Nos. 3–92–1531–0, 3–92–1656–0, 3–93–1145–0.

United States District Court, D. South Carolina, Columbia Division.

Sept. 2, 1995.

Orin Gail Briggs, Bruce W. Green, American Family Ass. Law Center, Tupelo, MS, Patrick J. Flynn, USC School of Law, Law Center, Columbia, SC, for plaintiffs.

William B. Harvey, III, Beaufort, SC, Samuel Richard Clawson, Charleston, SC, James Warner Alford, Columbia, SC, for defendants.

PERRY, District Judge.

These cases are before the Court pursuant to motions by the plaintiffs for an order preliminarily enjoining the enforcement of a Beaufort, South Carolina ordinance which prohibits persons from "willfully disturbing any neighborhood or business in the city by making or continuing loud and unseemly noises or by profanely cursing and swearing or using obscene language...." The individual plaintiffs are ministers who engage in the practice known as "street preaching." Plaintiffs allege *inter alia* that they have from time to time preached the gospel and have otherwise spoken publicly while standing or walking on the sidewalks adjacent to and forming a part of the public streets in downtown commercial area of Beaufort, South Carolina. Plaintiffs allege further that, as they preached, Beaufort police officials have arrested or threatened to arrest them on charges that their "loud" preaching was in violation of the city's anti noise ordinance. Plaintiffs argue that the ordinance, both facially and as applied to them, is a prior restraint upon their rights of freedom of speech and freedom of assembly, in violation of the First and Fourteenth Amendments of the United States Constitution.

## I.

For periods exceeding ten years male members of Calvary Baptist Church have preached while standing or walking upon the public streets and sidewalks in Beaufort, South Carolina.[1] In October, 1991 following receipt of citizen complaints about street preaching, the City Council enacted Section 9–1008 of the Beaufort Municipal Code which provides as follows:

It shall be unlawful for any person to willfully disturb any neighborhood or business in the City by making or continuing loud and unseemly noises, or by profanely cursing and swearing, or using obscene language. It shall further be unlawful for any person to wilfully disturb any neighborhood or business within the City by use of words which threaten or tend to threaten or incite physical violence, or which endanger or tend to endanger the health and safety of others within the City.

Following enactment of the ordinance, Beaufort's police chief wrote a "Notice to Street Preachers," copies of which were delivered to street preachers prior to placing them under arrest, which stated that "This Notice constitutes a warning that the present volume of your message upon the streets of Beaufort, in a business district, is considered unseemly noise and constitutes a violation of the city ordinance 9–1008(a). This warning is a result of a complaint from a business person who is considered a captive audience and objects to the unseemly noise." Copies of the "Notice" were distributed to Beaufort city policemen for presentation to offending

---

1. Affidavit of George Daughtey, Richard Simpson and Jordan Jody Enebrad. Daughety states that he has preached on Beaufort streets ten (10) years. Others state that members of Calvary Baptist Church believe that their mission is to preach the Gospel of Jesus Christ in public places, and that they preached on the streets and sidewalks for seventeen (17) years.

street preachers as warnings prior to arresting them.

Thereafter, members of Calvary Baptist Church continued to preach on the public streets of Beaufort and several of them have been arrested and charged with violating City Ordinance 9–1008(a).[2] Members of another church group, the Gethsemane Anabaptist Church, also began preaching upon Beaufort's public streets and sidewalks and many of them have been arrested and charged with violating the ordinance.[3]

2. In their complaint, the plaintiffs in Civil Action No. 3:91–1656 (*Calvary Baptist Church, et al. v. City of Beaufort, et al.*), alleged that from October, 1991 to the date on which the action was commenced, "at least fourteen (14) members of plaintiff church have been arrested and convicted of at least twenty-five (25) separate violations of the Ordinance.

3. In Civil Action No. 3:92–1531 (*Asquith, et al. v. City of Beaufort, et al.*), the plaintiffs allege that as of June 1, 1992 they and other street preachers have been arrested forty-five (45) times for street preaching after they had been preaching from two to four minutes; that each arrest resulted from the plaintiffs' preaching or reading from the Bible; that plaintiff Asquith was arrested on one occasion while reading from a South Carolina House of Representative resolution favoring the exercise of freedom of speech; that upon the arrests, plaintiffs were required to post maximum cash bonds and that they have been incarcerated in the Beaufort County Jail for varying periods and that some of them have been convicted and sentenced to imprisonment for periods of thirty (30) days for each offense.

In Civil Action No. 3:93–1145 (*Lindsey v. City of Beaufort, et al.*), the plaintiff alleges that on April 30, 1993 he was preaching on a public sidewalk in downtown Beaufort, that Sergeant Payne gave him a warning to stop preaching and stated that he has received a complaint from a merchant that Lindsey was in violation of the noise ordinance; that Payne verbally stated that if Lindsey continued to preach, he would "receive a ticket," and that, thereupon, Lindsey discontinued his preaching.

4. Plaintiff, George Daughety, avers that on May 16, 1992, he was preaching on Bay Street in downtown Beaufort, that he was across the street from Lipsitz Department Store—approximately fifteen (15) feet from a hot dog vender—projecting his voice toward the sky; that after a few seconds he was told by a Beaufort policeman that he was in violation of the city's noise ordinance; was told to lower his voice or quit preaching or that he would be arrested; and that rather than be arrested he stopped preaching. Daughety stated that on May 23, 1992 he again attempted to preach on a Beaufort street, this

Several plaintiffs testified and have filed affidavits averring that they commenced preaching and that, upon receipt of the notification to cease or be arrested, they stopped preaching.[4] Plaintiffs argue that on all occasions when they were warned or arrested, they were preaching and urging people to follow the teachings of Jesus Christ; that each of them has preached in a voice loud enough to be heard and that no amplification devices were used; that they have at all times conducted themselves in an orderly manner; and that they have not interfered

time at a lower volume than on May 16. Again, he was told he was in violation of the ordinance and that he must quit or be arrested. Daughety states that he inquired of the policeman what noise level violated the ordinance and that the officer replied that if the police received a citizen complaint that the preaching was too loud, they (the police) considered the noise level to be in violation of the ordinance. After the warning, Daughety stopped preaching. Daughety states that while preaching on a Beaufort Street on May 30, 1992 he was again told to stop or to be arrested and that he stopped on that and prior occasions because "he has a job, a wife and family to support and he could not afford to go to jail;" and, that on each occasion he would have continued preaching but for the threat of being arrested. Daughety stated that when he and other church members appeared on Beaufort streets they would preach and sing hymns and patriotic songs; and that though the singing was at least as loud as the preaching, no church member has been warned or arrested for singing. *Affidavit of George Daughety.*

Plaintiff, Richard Simpson, avers that on May 16, 1992, he was preaching on a downtown Beaufort street near Gatsby's Tavern and that after approximately thirty (30) seconds a Beaufort policeman told him someone had complained about his preaching but that when Simpson inquired who had complained, the officer stated that he did not know; and that he stopped preaching to avoid being arrested. Simpson stated that in addition to preaching, he and other church members sang hymns and patriotic songs; and that though their singing was as loud as their preaching, neither he nor others were warned or arrested for singing.

Plaintiff, Jeff Attlessey, states that on an occasion in June or July, 1992, while standing on a public street in downtown Beaufort, he was reading the Ten Commandments when warned by a city policeman that he would be arrested if he continued. Attlessey testified that he stopped preaching when directed to stop because he was unable to post bond if arrested and that a sentence of imprisonment would have adversely affected his employment.

with pedestrian or vehicular traffic and have not blocked entrances to or exits from any business establishment.

The defendants admit that the plaintiffs have been notified that their loud preaching was in violation of Beaufort Ordinance Section 9–1008(a) and that church members have been arrested and convicted.

The city of Beaufort defendants argue that all action taken by them was lawful and proper and that the plaintiffs may not proceed with this action, but should proceed to vindicate their rights in the ongoing criminal proceedings that were then pending on appeal in the South Carolina state courts.

## II.

■ The defendants move to dismiss these cases pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure upon the ground that the complaints fail to state claims upon which relief can be granted. Defendants argue that when Numbers 92–1531 *(Asquith, et al)* and 92–1656 *(Calvery Baptist Church, et al.)* were commenced, some or all of the plaintiffs had been arrested and charged with violating the anti noise ordinance which they seek here to invalidate; and that some of them had been convicted of having violated the ordinance and that their convictions were then pending appeal.[5] The defendants argue that, therefore, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny require this Court to dismiss these cases or to abstain from further consideration of them. The plaintiffs deny that all of them were convicted under the ordinance and they argue that those who are not charged with such violations may pursue their claims for relief in this Court. Plaintiffs also argue that, as to those plaintiffs who were under pending charges, they seek prospective relief only and that they do not ask this Court to enjoin pending prosecutions. Plaintiffs argue that, therefore, *Younger v. Harris* does not prevent this Court from granting them the relief they seek.

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) the plaintiff *Harris* was indicted by a California Grand Jury for allegedly violating the California Criminal Syndicalism Act. *Harris* then commenced suit in a United States District Court, seeking to enjoin the District Attorney of Los Angeles County from prosecuting him and alleging that the prosecution and even the presence of the Act inhibited the exercise of his rights of freedom of speech, guaranteed him under the First and Fourteenth Amendments. The three judge district court granted the injunctive relief. The Supreme Court reversed, holding that our "national policy" forbids federal writs from staying or enjoining state court proceedings except under special circumstances. *Younger v. Harris* recognizes the principle that judicial economy and proper state-federal relations preclude federal courts from exercising equitable jurisdiction to enjoin ongoing state prosecutions. *Id.* 401 U.S. at 43, 91 S.Ct. at 750. Thus, a federal court may not enjoin a pending state prosecution.

The record discloses that several ministers associated with Calvary Baptist Church and Gethsemane Anabaptist Church have been arrested while speaking or preaching while on public streets in Beaufort. Many of them have been convicted of violating the noise ordinance here challenged and have appealed their conviction. The South Carolina Supreme Court has affirmed those convictions and rejected challenges to the constitutionality of the ordinance. *City of Beaufort v. Baker,* 432 S.E.2d 470 (S.C.1993).

Several of the plaintiffs, Daughety, Simpson, Attlessey and William Bradley Lindsey had not been charged with violating the ordinance and, when these actions were commenced, had no state criminal proceedings pending against them. The plaintiff John Asquith has been convicted of loud preaching while on a Beaufort Street in violation of the ordinance and has paid a fine in accordance with the sentence imposed upon him. Asquith has not appealed his conviction and, when his action was filed, had no state

---

**5.** As to those who were convicted of violating the ordinance, their convictions were affirmed pursuant to divided opinions by the South Carolina Supreme Court. *City of Beaufort v. Baker,* 432

S.E.2d 470 (S.C.1993). When that decision was announced, attorneys for the convicted ministers announced their intention to seek further review in the United States Supreme Court.

criminal proceedings pending against him. The plaintiffs have testified that they fear they will again be arrested and prosecuted under the Beaufort noise ordinance if they speak or preach while on Beaufort city streets. The plaintiffs' stated fears cannot be characterized as imaginary or speculative. Many of their fellow ministers have already been arrested and prosecuted. Others have been threatened with arrest should they engage in conduct proscribed by the ordinance. Indeed, the City Attorney has stated in open court that Beaufort officials intend to continue enforcing the ordinance.

■ When a citizen, against whom there are no pending state criminal proceedings, properly invokes the jurisdiction of a federal court and seeks declaratory and injunctive relief against the enforcement of an allegedly unconstitutional state law, the federal court may proceed to hear the case and, if appropriate, grant relief. The Supreme Court has observed that:

> ... when a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation of federal rights. *See Steffel v. Thompson, et al.,* 415 U.S. 452 [94 S.Ct. 1209, 39 L.Ed.2d 505] (1974); *Doran v. Salem Inn, Inc., et al.,* 422 U.S. 922, 930–931 [95 S.Ct. 2561, 2567, 45 L.Ed.2d 648] (1975). *Younger* principles aside, a litigant is entitled to resort to a federal forum in seeking redress under 42 U.S.C. § 1983 for an alleged deprivation of federal rights.

*Wooley v. Maynard,* 430 U.S. 705, 710, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977), *citing Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609–610, 95 S.Ct. 1200, 1210–1211, 43 L.Ed.2d 482 (1975).

A contention that *Younger v. Harris* required the federal court to abstain, made on grounds identical to those urged here by these defendants, was rejected in *Steffel v. Thompson, et al.,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). In *Steffel* the police, having been summoned to the North Dekalb Shopping Center, ordered Steffel and other individuals to stop distributing handbills critical of American involvement in the Vietnam War on a sidewalk adjacent to the shopping center and warned them that they would be arrested if they did not stop. The group then left to avoid being arrested. Two days later Steffel and a companion returned to the shopping center and again began distributing handbills. The police told them to stop or be arrested. Steffel left to avoid arrest. His companion continued distributing handbills and was arrested and charged with criminal trespass under a Georgia statute. Steffel then commenced suit in the United States District Court for the Northern District of Georgia, seeking declaratory and injunctive relief against enforcement of the statute as to his handbilling activity. Responding to an argument that *Younger v. Harris* precluded Steffel's federal court challenge to the constitutionality of the statute, the Supreme Court first observed that Steffel was not the subject of an ongoing state criminal proceeding and, additionally, stated that:

> ... When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hopeless plaintiff between the Scylla of intentionally flouting state law and the charybdis of foregoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.

*Steffel v. Thompson, et al.,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). And though the Court only approved the granting of a declaratory judgment in *Steffel,* the Supreme Court has subsequently held that, where warranted by the facts, "the issuance of a preliminary injunction is not subject to the restrictions of *Younger.*" In *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95

S.Ct. 2561, 45 L.Ed.2d 648 (1975), the Court has stated that:

> The principle underlying *Younger* and *Samuels* (*Samuels v. Mackell,* 401 U.S. 66, [91 S.Ct. 764, 27 L.Ed.2d 688] (1971)), is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding. In the absence of such a proceeding, however, as we recognized in *Steffel,* a plaintiff may challenge the constitutionality of the state statute in federal court, assuming he can satisfy the requirements of federal jurisdiction.

422 U.S. at 930, 95 S.Ct. at 2567.

The defendants argue that as Asquith has been convicted in the Beaufort Municipal Court of having violated the ordinance, *Younger v. Harris* forecloses his right to maintain this suit. Asquith admits that he was convicted under the ordinance for loud preaching but states that he paid the fines imposed by the Municipal Judge and has not appealed his conviction and is not now the subject of an ongoing criminal proceeding.[6] Moreover, Asquith argues that, in this action, he does not seek to annul his conviction of violating the ordinance but that, instead, he seek prospective relief in the nature of an injunction against future application of the ordinance to his right to engage in constitutionally protected activities.

In *Wooley v. Maynard, et ux.,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), the Supreme Court rejected a contention made by New Hampshire officials that *Younger v. Harris* principles precluded a United States District Court from exercising its jurisdiction on facts analogous to those here asserted by Asquith. Under a New Hampshire statute, noncommercial vehicles were required to bear license plates embossed with the state motto, "Live Free or Die." Another New Hampshire statute made it a misdemeanor "knowingly (to obscure) ... the figures or letters on any number plate," which, according to State's highest court, included the state Motto. Mr. and Mrs. Maynard, followers of the Jehovah's Witnesses faith, considered the New Hampshire State Motto to be repugnant to their moral, religious and political beliefs. Pursuant to their beliefs, the Maynards began early in 1974 to cover up the motto on their license plates. Mr. Maynard was issued a succession of citations for violating the New Hampshire statutory scheme. A New Hampshire state court convicted him under the first two citations, imposed sentences which included fines of $25.00 and $50.00 respectively, and imprisonment for six months. Maynard informed the court that, as a matter of conscious, he refused to pay the two fines. The court thereupon sentenced him to jail for a period of 15 days. Prior to his trial on the second offense, Mr. Maynard was charged with a third violation of the statute. He was again convicted but the court announced that it was "continued for sentence." Maynard served the full sentence. Thereafter, Mr. and Mrs. Maynard commenced an action in the United States District Court for the District of New Hampshire for declaratory and injunctive relief against future enforcement of the state statute making it a criminal offense to obscure the motto. A Three Judge District Court entered an order enjoining the State "from arresting and prosecuting (the Maynards) at any time in the future for covering over that portion of their license plates that contains the motto '*Live Free or Die.*'" On appeal, New Hampshire officials argued that the District Court was precluded from exercising jurisdiction under principles enunciated in *Younger v. Harris, supra,* because Maynard failed to seek review of his criminal

---

6. In his affidavit, Asquith states that he and other members of Gethsemane Anabaptist Church have been arrested for preaching "45 times during more than 10 separate days of preaching;" that on each such occasion "the person arrested was prohibited from preaching for longer than four minutes;" that the persons arrested "were preaching or reading from the Bible with the unamplified voice at a level loud enough to be heard across Bay Street ... (and) on one occasion John Asquith was arrested while reading a resolution in favor of free speech passed by the South Carolina House of Representatives; and that "plaintiffs have been required to post maximum cash bonds (sometimes 2 bonds for the same offense) and have been incarcerated in the County Jail for periods ranging from four hours to four days and some have been tried and required to serve time up to 30 days for each offense."

convictions. Rejecting the argument, the United States Supreme Court distinguished the Maynards case from *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), upon which New Hampshire officials had relied. The court noted that in *Huffman* "the appellee was seeking to prevent by means of federal intervention, enforcement of a state-court judgment...." and that "failure to exhaust its state appeals barred federal intervention under principles of Younger...." The Court observed that the Maynards suit was "in no way 'designed to annul the results of a state trial' since the relief sought is wholly prospective, to prevent further prosecution under a statute alleged to violate (the Maynards') constitutional rights.... The Maynards seek only to be free from prosecutions for future violations of the same statutes. Younger does not bar federal jurisdiction." *Wooley v. Maynard, et ux*, 430 U.S. at 711, 97 S.Ct. at 1433.

In these cases also, the plaintiffs seek only to be free from prosecutions under the Beaufort Noise Ordinance for their unamplified preaching and speaking while on the public streets of the city.

Upon consideration, this Court concludes that *Younger v. Harris* does not preclude the exercise of jurisdiction in these cases.

■ Additionally, the defendants' argument that this Court should abstain "as a matter of discretion" and in deference to the criminal proceedings which were then pending in South Carolina state courts must be rejected.[7] In view of the announced intention, stated by Beaufort officials, that they will continue enforcing the ordinance and applying it to the plaintiffs preaching and speaking activities, this Court must proceed to adjudicate the merits of the plaintiffs' claims. As the Supreme Court has stated:

Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred. For example, 'we

have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution.' *Cohens v. Virginia,* 6 Wheat 264, 404, 5 L.Ed. 257 (1871). '[t]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction.' *Chicot County v. Sherwood,* 148 U.S. 529, 534 [13 S.Ct. 695, 697–698, 37 L.Ed. 346] (1893) (citations omitted). 'When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.... The right of a party plaintiff to choose a federal court where there is a choice cannot be properly denied.' *Willcox v. Consolidated Gas Co.,* 212 U.S. 19, 40 [29 S.Ct. 192, 195, 53 L.Ed. 382] (1909) (citations omitted). Underlying these assertions is the undisputed constitutional principles that Congress, and not the judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds....

*New Orleans Public Service, Inc. v. Council of City of New Orleans, et al.,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

The motions to dismiss these cases or, alternatively, to abstain from the exercise of jurisdiction, are hereby denied.

### III.

The Beaufort anti noise ordinance provides, in pertinent part, as follows:

It shall be unlawful for any person to willfully disturb any neighborhood or business in the city by making or continuing loud and unseemly noises....

Beaufort Municipal Code, § 9–1008(b) [8]

Each of the plaintiffs has from time to time, preached or otherwise spoken, without

---

7. Recently, the South Carolina Supreme Court affirmed convictions of some "street preachers" in the *City of Beaufort v. Baker, et al.* (No. 23874) filed June 15, 1993, 432 S.E.2d 470 (S.C.1993). Additionally, the Court is advised that some ministers have been arrested and have posted bonds but have not been tried.

8. The full text of the ordinance is stated ante at p. 977. The Court is advised that during the pendency of these cases, the ordinance has been amended but the above language remains as an integral part thereof. No standards describing

amplification, while standing or walking upon the sidewalks of public streets in a commercial non residential section of the City of Beaufort. As each plaintiff has spoken, Beaufort police officials have ordered him either to stop preaching, lower the volume of his message, or that he would be arrested. Additionally, each of the plaintiffs was given a copy of the written "Notice to Street Preachers," written by the City's police chief and previously distributed to all police officers for ready delivery to offending street preachers. The written notice states that [t]his notice constitutes a warning that the present volume of your message upon the streets of Beaufort, in a business district, is considered unseemly noise and constitutes a violation of the city ordinance, 9–1008(a).... This warning is a result of a complaint from a business person who is considered a captive audience and objects to unseemly noise." To avoid being arrested, some plaintiffs stopped speaking.[9] Some of them were arrested, tried and convicted. The plaintiffs argue that the ordinance, both facially and as applied to them, is both vague and overbroad and that it constitutes a prior restraint upon their rights of freedom of speech and freedom of assembly, in violation of the First and Fourteenth Amendments of the United States Constitution.

### A.

The Supreme Court teaches that a legislative enactment "is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). *See also U.S. Labor Party, et al. v. Pomerleau, et al.,* 557 F.2d 410 (4th Cir. 1977). Vague laws offend several due process concerns: "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–2299, 33

L.Ed.2d 222 (1972); *See also Frigby v. Shultz,* 487 U.S. 474 (1988); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Cramp v. Board of Public Instruction,* 368 U.S. 278, 287, 82 S.Ct. 275, 280–281, 7 L.Ed.2d 285 (1961); *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811–812, 98 L.Ed. 989 (1954); *Jordan v. DeGeorge,* 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1957); *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939); *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *United States v. Cohen Grocery Co.,* 255 U.S. 81, 89, 41 S.Ct. 298, 300, 65 L.Ed. 516 (1921); *International Harvester Co. v. Kentucky,* 234 U.S. 216, 34 S.Ct. 853, 58 L.Ed. 1284 (1914). Second, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 U.S. at 108–109, 92 S.Ct. at 2299. *See also Coates v. Cincinnati,* 402 U.S. 611, 619, 91 S.Ct. 1686, 1690, 29 L.Ed.2d 214 (1971) (Black, J., concurring); *Interstate Circuit v. Dallas,* 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); *Ashton v. Kentucky,* 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966); *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966); *Shuttlesworth v. Birmingham,* 382 U.S. 87, 90–91, 86 S.Ct. 211, 213, 15 L.Ed.2d 176 (1965); *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Saia v. New York,* 334 U.S. 558, 559–560, 68 S.Ct. 1148, 1149, 92 L.Ed. 1574 (1948); *Thornhill v. Alabama,* 310 U.S. 88, 97–98, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940); *Herndon v. Lowry,* 301 U.S. 242, 261–264, 57 S.Ct. 732, 741–742, 81 L.Ed. 1066 (1937); *U.S. Labor Party, et al. v. Pomerleau, et al.,* 557 F.2d 410 (4th Cir.1977). Third, "where [as here] a vague statute 'abuts upon sensitive areas of basic First Amendment freedoms,' it operates to inhibit the exercise of those freedoms....

---

sound levels have been added to the amended ordinance.

9. See note 4.

Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford,* 408 U.S. at 109, 92 S.Ct. at 2299 (1972). *See also Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964); *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958); *Interstate Circuit v. Dallas,* 390 U.S. 676, 684, 88 S.Ct. 1298, 1303, 20 L.Ed.2d 225 (1968); *Ashton v. Kentucky, supra* 384 U.S. at 195, 200–201, 86 S.Ct. at 1407, 1410–1411 (1966); *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965); *Smith v. California,* 361 U.S. 147, 150–152, 80 S.Ct. 215, 217–218, 4 L.Ed.2d 205 (1959); *Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Stromberg v. California,* 283 U.S. 359, 369, 51 S.Ct. 532, 535–536, 75 L.Ed. 1117 (1931).

■ An ordinance is overbroad if, within its reach, it prohibits constitutionally protected conduct. *Grayned v. City of Rockford,* 408 U.S. 104, 114–115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972); *Zwickler v. Koota,* 389 U.S. 241, 249–250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967); *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Coates v. Cincinnati,* 402 U.S. 611, 616, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971); *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965); *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951). When, as here, an ordinance is challenged as overbroad, the crucial question is whether it sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments. In these cases, the plaintiffs contend *inter alia* that the ordinance has been applied in a manner which interferes with their First and Fourteenth Amendment rights to speak and preach the gospel on the public streets of Beaufort.

### B.

■ The defendants argue that the ordinance does not infringe upon the plaintiffs' exercise of their constitutional rights as alleged. The defendants contend that while speaking on the streets adjacent to the busi-nesses in the down town area of Beaufort, the plaintiffs were loud and unseemly and that they have offended and disturbed the merchants and others. The defendants argue that there are other areas of the community which are available to the plaintiffs where they may preach the gospel without disturbing the merchants and other citizens. But, "it goes without saying that 'one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'" *Grayned v. Rockford,* 408 U.S. 104, 118, 92 S.Ct. 2294, 2305, 33 L.Ed.2d 222 (1972); *Schneider v. State,* 308 U.S. 147, 163, 60 S.Ct. 146, 151–152, 84 L.Ed. 155 (1939); *Furr v. Swansea,* 594 F.Supp. 1543 (D.S.C. 1984). "(S)reets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." *Hudgens v. NLRB,* 424 U.S. 507, 515, 96 S.Ct. 1029, 1034, 47 L.Ed.2d 196 (1976); *Amalgamated Food Employees Union v. Logan Valley Plaza,* 391 U.S. 308, 315, 88 S.Ct. 1601, 1606–1607, 20 L.Ed.2d 603 (1968). The public streets and sidewalks where plaintiffs have preached are "traditional public fora;" and the Beaufort anti noise ordinance must be judged against the stringent standards established for restrictions on speech in public fora. *Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). The Supreme Court has stated that:

> In considering the right of a municipality to control the use of public streets for the expression of religious (or political) views, we start with the words of Mr. Justice Roberts that 'wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'

*Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939); *Kunz v. New York,* 340 U.S. 290, 293, 71 S.Ct. 312, 314–315, 95 L.Ed. 280 (1951); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22

L.Ed.2d 162 (1969). *See also Grayned v. Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2302–2303, 33 L.Ed.2d 222 (1972); and *Frisby v. Schultz,* 487 U.S. 474, 480–481, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988).

▆▆▆ Local authorities are not denied the power to regulate sound levels on public streets by enactment of appropriate statutes or ordinances. But they cannot constitutionally do so through the enactment of an ordinance whose violation may entirely depend upon whether a policeman or other person is annoyed. *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).[10] The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of free speech and free assembly simply because its exercise may be annoying to some people. *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Coates v. Cincinnati, supra.* Where the statute or ordinance imposes restrictions on protected activity by citizens while on the public streets of a municipality, it must be narrowly drawn.

In *Saia v. New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948), Saia, a minister of the Jehovah's Witnesses faith, was convicted of violating a Lockport New York ordinance which prohibited the use of sound amplification devices except with the permission of the Chief of Police. Saia had previously obtained permission to use sound equipment for amplification of his religious lectures. When that permit expired, he applied for another one but was refused on the ground that complaints had been made. Saia proceeded, using an amplification device, to lecture or preach in a public park despite the refusal of the police chief to grant the permit. He was arrested, convicted and sentenced to imprisonment. The conviction was ultimately reversed by the United States Supreme Court which held, *inter alia* that the ordinance was unconstitutional because it "establishes a previous restraint on the right of

free speech in violation of the First amendment which is protected by the Fourteenth Amendment against State action." The Court observed that the ordinance contained no standards for the exercise of (the police chief's) discretion ... and that it was "not narrowly drawn to regulate the hours or places of use of loud speakers, or the volume of sound [the decibels] to which they must be adjusted." Significantly, the Court stated that:

> Loud speakers are today indispensable instruments of effective public speech. The sound track has become an accepted method of political campaigning. It is the way people are reached. Must a candidate for governor or Congress depend on the whim or caprice of the Chief of Police in order to use his sound track for campaigning? Must he prove to the satisfaction of that official that his noise will not be annoying to people? .... Noise can be regulated by regulating decibels. The hours and place of public discussion can be controlled .... Any abuses which loud speakers create can be controlled by narrowly drawn statutes. When a city allows an official to ban them in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas. In this case, a permit is denied because some persons were said to have found the sound annoying. In the next one, a permit may be denied because some people find the ideas annoying. Annoyance at ideas can be cloaked in annoyance at sound. The power of censorship inherent in this type of ordinance reveals its vice.

*Id.* 334 U.S. at 561–562, 68 S.Ct. at 1150–1151.

In *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Court considered a challenge to the constitutionality of an anti noise ordinance which provided that "[N]o person while on public or private grounds adjacent to any building in

---

10. The Supreme Court has held that "mere public intolerance or animosity cannot be the basis for abridgement of these constitutional freedoms." *Id.* at 615, 91 S.Ct. at 1689. *See also Street v. New York,* 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969); *Cox v. Louisiana,* 379 U.S. 536, 551–553, 85 S.Ct. 453, 462–464, 13

L.Ed.2d 471 (1965); *Edwards v. South Carolina,* 372 U.S. 229, 238, 83 S.Ct. 680, 685, 9 L.Ed.2d 697 (1963); *Terminiello v. Chicago,* 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *Cantwell v. Connecticut,* 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940); *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

which a school or any class thereof is in session, shall willfully make ... any noise or diversion which disturbs or tends to disturb the peace or good order of such school...." Grayned and others demonstrated in front of a high school which was then in session and *inter alia* "cheered, chanted, baited policemen and made other noise that was audible in the school ... [and] hundreds of students were distracted from their school activities...." *Id.* at 105, 92 S.Ct. at 2297. Grayned was arrested and convicted under Rockford's anti noise ordinance. The United States Supreme Court rejected Grayned's challenge that the anti noise ordinance was unconstitutionally vague or overbroad and noted that, according to its preamble, the ordinance was "designed for the protection of schools" and that it forbids "deliberately noisy or diversionary activity that disrupts ... normal school activity and that such willful activity is prohibited" at fixed times ... when school is in session ... at a sufficiently fixed place ... 'adjacent' to the school." *Id.* at 110–111, 92 S.Ct. at 2300. The Court also observed that "[i]t is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted." As Rockford did not claim the broad power to punish all "noises" and "diversions," "[t]he vagueness of these terms, by themselves, is dispelled by the ordinance's requirements that (1) the 'noise or diversion' be actually incompatible with normal school activity; (2) there be a demonstrated causality between the disruption that occurs and the 'noise or diversion' and; (3) the acts be 'willfully done.' " *Id.* at 113–114, 92 S.Ct. at 2302. The ordinance was not deemed overbroad. It was "narrowly tailored to further Rockford's compelling interest in having an undisrupted school session conducive to the students' learning, and does not unnecessarily interfere with First Amendment rights."

In *Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), the United States Supreme Court rejected challenges to the constitutionality of a Brookfield, Wisconsin municipal ordinance that prohibited "picketing before or about the residence or dwelling of an individual...." Id. at 477, 108 S.Ct. at 2497. Brookfield, a residential suburb of Milwaukee, enacted the ordinance after groups of individuals who were strongly opposed to abortion assembled outside the residence of a doctor on several occasions and engaged in picketing activity. Schultz and others filed an action in the United States District Court for the Eastern District of Wisconsin, asserting that the ordinance violated their rights of freedom of speech and assembly under the First Amendment. The District Court granted a preliminary injunction which was thereafter affirmed by the United States Court of Appeals for the Seventh Circuit. 807 F.2d 1339 (7th Cir.1986). The United States Supreme Court reversed the lower court's decision, observing, *inter alia* that "the ordinance is readily subject to a narrowing construction that avoids constitutional difficulties" ... and that "the use of the singular form of the word 'residence' and 'dwelling' suggests that the ordinance is intended to prohibit only picketing focused on, and taking place in front of, a particular residence." 487 U.S. at 482, 108 S.Ct. at 2501. The Court also observed that, to fall within the scope of the ordinance "the picketing must be directed at a single residence," and construed the ban to be a limited one; "only focused picketing taking place solely in front of a particular residence is prohibited." 487 U.S. at 483, 108 S.Ct. at 2502. The Court found that the Brookfield ordinance serves a significant government interest ... "the protection of residential privacy." The Court stated that:

> The State's interest in protecting the well being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society. *Cary [Carey] v. Brown,* 447 U.S. [455] at 471 [100 S.Ct. 2286, 2296, 65 L.Ed.2d 263 (1980)]. Our prior decision have often remarked on the unique nature of the home, 'the last citadel of the tired, the weary, and the sick,' *Gregory v. Chicago,* 394 U.S. 111 [89 S.Ct. 946, 22 L.Ed.2d 134] (1969) (Black, J., concurring), and have recognized that 'preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value....

487 U.S. at 484, 108 S.Ct. at 2502.

Thus, the Brookfield ordinance was "narrowly tailored" to protect the "unwilling residen-

tial listener." 487 U.S. at 488, 108 S.Ct. at 2504.

In *U.S. Labor Party, et al. v. Pomerleau,* 557 F.2d 410 (4th Cir.1977), the Court considered the manner of enforcement of Baltimore's noise control ordinance. Enacted to eliminate unnecessary noise throughout the City, the ordinance established maximum sound levels permissible in residential, commercial, and industrial zones, "[e]ach level defined as a specific number of decibels at any point on the property line of the use." Members of the United States Labor party, a political organization, used amplifiers to conduct political rallies on the public streets of Baltimore. The Bureau of Noise Control warned party members that their amplifiers exceeded the sound level permitted under the ordinance. At the hearing on the Labor party's suit for a declaratory judgment and injunctive relief, the Director of the Bureau of Noise Control testified that following a complaint about a violation, his department measured the noise in decibels with a sound level meter and acknowledged that the number of decibels depends in part on how far from the source of the sound the measurement is taken. Upon reviewing the testimony describing the methods and procedures of measuring sound and enforcing the ordinance, the Court observed that "because a violation depends on the subjective opinion of the investigator, the speaker has no protection against arbitrary enforcement of the ordinance and held that the ordinance as applied to the Labor Party's rallies is vague and overbroad in violation the First and Fourteenth amendments.

### IV.

The Beaufort ordinance as applied to the Plaintiffs in these cases does not meet the strict tests of vagueness and overbreadth applicable to the regulation of religious and political speech. The ordinance, as applied in these cases, fails to provide fair warning. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); *U.S. Labor Party, et al v. Pomerleau, et al,* 557 F.2d 410 (4th Cir.1977). The evidence discloses that the police have

enforced the ordinance in response to the subjective complaints of persons in the vicinity where the plaintiffs have preached on the basis of their stated annoyances. The plaintiffs and others are thus penalized if they fail to guess correctly the sound level they may use to convey their messages. Because a violation depends on the subjective opinions of complaining citizens and police officials, plaintiffs have no protection against the arbitrary enforcement of the ordinance. *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). As applied by Beaufort's officials, the ordinance is unconstitutionally vague, because it subjects the exercise of the right of free speech and assembly to an unascertainable standard. And the ordinance is unconstitutionally overbroad because it authorizes the punishment of constitutionally protected conduct. *Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420; *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). As applied in these cases, the ordinance curtails or prohibits the amplification of religious and political expression solely because of an unspecified sound level that gives no guidance to either the speaker or police officials charged with its enforcement.

### V.

In the Fourth Circuit, the standards for interlocutory injunctive relief are set forth in *Blackwelder Furniture Company, v. Seilig Manufacturing Co.* 550 F.2d 189 (4th Cir.1977) and are known as the "balance of hardship" test. That test requires the flexible interplay of four factors: the possibility of irreparable harm to the plaintiffs if the relief is denied; the apparent strength of plaintiffs' case on the merits; the potential harm to the defendants if the preliminary injunction is issued; and the public interest. Id. See also, *Federal Leasing, Inc. v. Underwriters of Lloyds,* 650 F.2d 495 (4th Cir. 1981); *Telvest, Inc. v. Bradshaw,* 618 F.2d 1029 (4th Cir.1980). A strong showing of a likelihood of irreparable injury lessens the plaintiffs' need to demonstrate the likelihood of success on the merits. *Maryland Undercoating Co. v. Payne,* 603 F.2d 477 (4th Cir.1977). A strong likelihood of success on the merits reduces the need to meet the

988

other requirements. *Furr v. Town of Swansea*, 594 F.Supp. 1543 (D.S.C.1984).

In these cases, the likelihood of success is manifest, as has been demonstrated above. Thus, the possibility, indeed, the probability that plaintiffs will suffer irreparable harm if relief is denied is quite apparent. They are subject to arbitrary arrest and prosecution for preaching on the streets of Beaufort on the complaint of citizens pursuant to an ordinance which contains no standards concerning permissible sound levels and which subjects them to the whims of persons who may find them annoying or who object to the messages they seek to convey. The defendants can suffer no harm by the issuance of a preliminary injunction, because they have no right to the enforcement of an unconstitutional law or the unconstitutional application of a law otherwise lawful for the suppression of speech.

Accordingly, for the reasons stated above, the defendants are hereby preliminarily enjoined from applying the Beaufort anti noise ordinance (Section 9–1008(a) of the Beaufort Ordinances) by arresting and prosecuting the plaintiffs solely because of their speaking, preaching or assembling upon the public streets of the City of Beaufort, South Carolina.

IT IS SO ORDERED.