Jeffrey DUPRES; John Nagle; and Ryan Marsh

v.

**CITY OF NEWPORT, RHODE ISLAND, a Municipal Corporation; Michael D. Malinoff, in his capacity as City manager of the City of Newport, Rhode Island; and David R. Kelly, in his capacity as Police Chief of the City of Newport.**

**No. CA 96–715ML.**

United States District Court, D. Rhode Island.

Oct. 2, 1997.

Thomas W. Kelly, Newport, RI, for Plaintiffs.

Christopher J. Behan, Asst. City Sol., Newport, RI, for Defendant.

### DECISION AND ORDER

LISI, District Judge.

Plaintiffs Jeffrey Dupres, John Nagle, and Ryan Marsh commenced this action on December 17, 1996, seeking injunctive relief precluding the enforcement of an ordinance enacted by defendant City of Newport, a declaratory judgment that the ordinance violates the First, Fifth, and Fourteenth Amendments to the United States Constitution, and monetary damages. The parties submitted a stipulated statement of facts and agreed that the Court would decide this case based on that submission.

### I. FACTS

This action arises out of two mutually exclusive incidents that occurred in Newport, Rhode Island in 1996. Both incidents involved occasions on which the various plaintiffs were cited by officers of the Newport Police Department for violating chapter 8.12 of the Codified Ordinances of the City of Newport ("Newport"). Section 8.12.070 of this chapter, which is entitled "Noise Abatement," provides that "[n]o person shall make, continue or cause to be made or continued, except as permitted, any noise or sound which constitutes a noise disturbance. . . ." NEWPORT, R.I., NOISE ABATEMENT ORDINANCES, § 8.12.070. A "noise disturbance" is defined as

any sound which exceeds the dBA level for such sound set out in this chapter; the making, creation or permitting of any unreasonably loud, disturbing or unnecessary noise; or the making, creating or permitting of any noise of such character, intensity or duration as to be detrimental to the life, health or welfare of any individual, or which either steadily or intermittently annoys, disturbs, injures or endangers the comfort, repose, peace or safety of any individual.

Id. at § 8.12.040.

The first incident involving the ordinance in question occurred at approximately 2:07 a.m. on May 26, 1996. It was at that time that Manuel Medeiros, a Newport police officer acting in his official capacity, issued citations to plaintiffs Dupres and Nagle for violating chapter 8.12 at their residence located at 113 Memorial Boulevard West in Newport. Medeiros stated in his police report that the two plaintiffs were with a group of people who appeared intoxicated and were yelling and laughing out loud. While Dupres and Nagle concede that they were talking and laughing on their porch, they assert that their voices were not amplified and that they were not using any sound amplification device such as a radio, television, or stereo.

The citations issued to Dupres and Nagle required their appearance in the City of Newport Municipal Court ("Municipal Court") on June 4, 1996. The Municipal Court complaints alleged that Dupres and Nagle had violated the provisions of chapter 8.12 on May 26 in that they did "permit noise to emanate from their residence so as to cause a nuisance to persons living in close proximity to the residence. . . ." The plaintiffs, whose motions to dismiss were denied, were ultimately adjudged not to have violated the noise ordinance by Judge James F. Hyman of the Newport Municipal Court.

The second incident involving the ordinance in question occurred at approximately 1:00 a.m. on September 13, 1996. It was at that time that William Warner, a Newport police officer acting in his official capacity, appeared at the apartment of plaintiff Marsh, located at 37 Mount Vernon Street in Newport, and issued a citation to him for violating

chapter 8.12. Warner stated in his police report that he had been dispatched to the apartment in response to a complaint about loud noise at that location and that he heard a stereo being played at high volume and people laughing and talking as he approached the apartment. Marsh admits to being in the presence of five other individuals that evening, but contends that Warner made no effort to determine either the location from which the offensive noises emanated or the identity of the complaining party.

The citation issued to Marsh required his appearance in Municipal Court on September 30, 1996. The Municipal Court complaint mirrored the one that issued against Dupres and Nagle. Marsh, whose own motion to dismiss was denied, was ultimately found not to have violated the ordinance by Judge Hyman on October 21, 1996. Marsh was never alleged to have violated any other local or state law.[1]

The only evidence offered against any of the three plaintiffs in Municipal Court was the testimony of the police officers who issued the citations. No complainants were identified or called as witnesses. The officers testified as to their own direct observations and sensory perceptions of the noise emanating from the two residences. The officers did not offer any evidence derived from the use of decibel meters. To the contrary, they testified that decibel meters were never used to measure noise emanating from the residences.

## II. DISCUSSION

### A. *Standing*

■ This Court begins its analysis by addressing the issue of the plaintiffs' standing to challenge the constitutionality of Newport's noise abatement ordinances. It is incumbent upon this Court to do so because standing "is a 'threshold question in every federal case'" and determines "'the power of the court to entertain the suit.'" *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 12 (1st Cir. 1996) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). The defendants assert that because the plaintiffs were adjudged by the Municipal Court not to have violated the ordinances in question, they have not suffered injuries sufficient to confer standing upon them. Moreover, they contend that the threat of future prosecution is based on conjecture and therefore cannot support standing for any of these plaintiffs.

■ Notwithstanding the defendants' asseverations to the contrary, this Court is convinced that the plaintiffs have the requisite standing to maintain this cause of action. It is well settled that the traditional principles of standing are relaxed in the context of a pre-enforcement challenge to a statute that facially abridges either the First Amendment or Fourteenth Amendment and provides for criminal penalties. *See id.* at 13–15; *Fratiello v. Mancuso*, 653 F.Supp. 775, 787–88 (D.R.I.1987). In both instances, a plaintiff is deemed to be injured by the fact that he or she might be chilled from exercising his or her right to free expression or forego expression in order to avoid enforcement consequences. *See New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d at 13.

So it is here. The plaintiffs challenge the validity of the ordinance as an impermissible infringement of their First Amendment rights. Further, the plaintiffs assert that the ordinance fails to describe the proscribed conduct with the requisite specificity necessary to pass constitutional muster. They assert that the shortcomings are of such a magnitude that "a person of average intelligence and experience cannot understand it and conform his or her behavior to the requirements of the Ordinance." Complaint at 6. As a result, they argue that the ordinance has a "'chilling effect' on the exercise of free speech." *Id.*

### B. *The Ordinance*

In proceeding to address the plaintiffs' substantive constitutional claims, this Court is mindful of the fact that the noise ordinance can be viewed as proscribing four dis-

---

1. It should be noted, however, that another individual was arrested at Marsh's apartment on the night in question for an unrelated state criminal offense.

crete categories of noise. These categories are: (1) any sound which exceeds the dBA level for such sound set out in the noise abatement chapter (hereafter referred to as the "decibel provision"); (2) any unreasonably loud, disturbing, or unnecessary noise (hereafter referred to as the "unreasonable and unnecessary provision"); (3) any noise of such character, intensity, or duration as to be detrimental to the life, health, or welfare of any individual (hereafter referred to as the "health and welfare provision"); and, (4) any noise which either steadily or intermittently annoys, disturbs, injures, or endangers the comfort, repose, peace, or safety of any individual (hereafter referred to as the "annoyance provision"). *See* NEWPORT, R.I., NOISE ABATEMENT ORDINANCES, § 8.12.040. It is important to cull out these various categories in light of the principle that in the absence of evidence of legislative intent to the contrary, " '[t]he unconstitutionality of a part of an Act does not necessarily defeat ... the validity of its remaining provisions.' " *United States v. Jackson,* 390 U.S. 570, 585, 88 S.Ct. 1209, 1218, 20 L.Ed.2d 138 (1968) (quoting *Champlin Refining Co. v. Commission,* 286 U.S. 210, 234, 52 S.Ct. 559, 565, 76 L.Ed. 1062 (1932)); *see also Buckley v. Valeo,* 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976).

### C. *The Due Process Claim*

The plaintiffs contend that the ordinance is so vague and overbroad that it violates the due process clause of the Fourteenth Amendment. The concepts of vagueness and overbreadth will be addressed *seriatim.*

### 1. Vagueness

■■■ "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); *see also Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 3255–56, 82 L.Ed.2d 462 (1984). Generally,

laws must give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. at 108, 92 S.Ct. at 2298–99; *see also Whiting v. Town of Westerly,* 942 F.2d 18, 22 (1st Cir.1991); *Brasslett v. Cota,* 761 F.2d 827, 838 (1st Cir.1985). A vague law both "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis" and leads "citizens to 'steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked.' " *Grayned v. City of Rockford,* 408 U.S. at 108–09, 92 S.Ct. at 2299 (quoting *Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 1322–23, 12 L.Ed.2d 377 (1964)) (internal quotation marks omitted); *see also Whiting v. Town of Westerly,* 942 F.2d at 22.

■■■ The decibel provision of the ordinance clearly defines the conduct it proscribes with the requisite specificity so as to pass constitutional muster. This portion of the ordinance establishes specific, objective, and measurable limits on sound for the various parts of the city.[2] This provision provides individuals with a clear, defined description of proscribed conduct, thus, permitting them to specifically tailor their conduct and actions to conform with the ordinance. As such, the decibel clause satisfies the due process requirements of the Fourteenth Amendment.

■■■ The remaining provisions do not adequately delineate their proscriptions. Instead they set forth standards of conduct which are impermissibly broad and lacking objectivity. *See Jim Crockett Promotion, Inc. v. City of Charlotte,* 706 F.2d 486, 489–90 (4th Cir.1983) (portion of ordinance prohibiting "unnecessary noise" impermissibly vague); *Asquith v. City of Beaufort,* 911 F.Supp. 974, 987 (D.S.C.1995) (ordinance declaring it unlawful for "any person to willfully disturb any neighborhood or business ... by

---

**2.** For example, the sound limit in residential areas of Newport is 65 dBA from 7:00 a.m. to 10:00 p.m., and 55 dBA from 10:00 p.m. to 7:00 a.m., whereas the limit in the Waterfront Business District is 75 dBA at all times. NEWPORT, R.I., NOISE ABATEMENT ORDINANCES, § 8.12.080. A decibel, or "dB," is "a logarithmic

and dimensionless unit of measure often used in describing the amplitude of sound...." *Id.* at 8.12.040. The "A–Scale," or "dBA," is "the sound level in decibels measured using the A-weighted network as specified in [American National Standards Institute] Standard 1.4–1971 for sound level meters." *Id.*

making or continuing loud and unseemly noises, or by profanely cursing and swearing, or using obscene language" impermissibly vague); *Dae Woo Kim v. City of New York*, 774 F.Supp. 164, 170 (S.D.N.Y.1991) (ordinance prohibiting "any excessive or unusually loud sound or any sound which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a person" impermissibly vague); *Langford v. City of Omaha*, 755 F.Supp. 1460, 1463 (D.Neb.1989) (ordinance prohibiting "unreasonable noise" too vague); *Fratiello v. Mancuso*, 653 F.Supp. at 790 (ordinance prohibiting "unnecessary noises or sounds ... which are physically annoying to persons, or which are so harsh, or so prolonged or unnatural, or unusual in their use, time and place as to occasion physical discomfort, or which are injurious to the lives, health, peace and comfort of the inhabitants of the city" too vague). "Although we cannot expect mathematical certainty from our language," *Fratiello v. Mancuso*, 653 F.Supp. at 790, it cannot be so ambiguous as to allow the determination of whether a law has been broken to depend upon the "subjective opinions of complaining citizens and police officials," *Asquith v. City of Beaufort*, 911 F.Supp. at 987; *see also Dae Woo Kim v. City of New York*, 774 F.Supp. at 170.

The flaws inherent in the ordinance are magnified by the fact that the ordinance does not define a specific context in which it is intended to apply. Indeed, the vagueness of a statute's terms can often be dispelled by language reciting the statute's purpose and specifically defining the setting in which it applies. *See Grayned v. City of Rockford*, 408 U.S. at 112–14, 92 S.Ct. at 2301–02 (vagueness of terms in statute dispelled by fact that statute was "written specifically for the school context," and that "prohibited disturbances are easily measured by their impact on the normal activities of the school."). Such qualifying language makes it possible for individuals to determine what conduct is prohibited. *See id.* at 114, 92 S.Ct. at 2302. Under the Newport ordinance, the legality of

a person's conduct is judged solely by the subjective characteristics assigned to it by anyone exposed to it.

### 2. Overbreadth

■ Mutually exclusive of the question of whether a statute is impermissibly vague is the question of whether it is overbroad—a concept that is "a fraternal, not identical twin." *Goguen v. Smith*, 471 F.2d 88, 91 (1st Cir.1972), *aff'd*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). An enactment is overbroad, and therefore invalid, if it includes within its prohibitions constitutionally protected conduct. *See Grayned v. City of Rockford*, 408 U.S. at 114, 92 S.Ct. at 2302; *United States v. Johnson*, 952 F.2d 565, 577 (1st Cir.1991), *cert. denied*, 506 U.S. 816, 113 S.Ct. 58, 121 L.Ed.2d 27 (1992); *Whiting v. Town of Westerly*, 942 F.2d at 21. This is so because these laws, much like those that are vague, serve to deter privileged activity. *See Grayned v. City of Rockford*, 408 U.S. at 114, 92 S.Ct. at 2302.

■ In the context of the First Amendment, the crucial question is "whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Id.* at 114–15, 92 S.Ct. at 2302. In answering this question, this Court is mindful of the First Circuit's admonition that "'the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to overbreadth challenge.'" *United States v. Johnson*, 952 F.2d at 577 (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984)). "To warrant facial invalidation, ... 'the overbreadth of a statute must not only be real, but substantial as well....'" *Id.* at 579 (quoting *New York v. Ferber*, 458 U.S. 747, 770, 102 S.Ct. 3348, 3362, 73 L.Ed.2d 1113 (1982)).

■ The plaintiffs assert that the ordinance here is overbroad because it impermissibly infringes upon their rights under the First Amendment.[3] Specifically, they assert that the ordinance reaches beyond what it

---

**3.** The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to

might permissibly regulate and "criminalizes constitutionally protected free speech." Complaint at 2.

 There is little question that the decibel provision once again survives the plaintiffs' constitutional attack. "The First Amendment does not vest citizens with an absolute right to speak whenever and wherever they choose. It is well settled that a municipality is permitted to enact reasonable time, place and manner restrictions applicable to all speech irrespective of content." *Fratiello v. Mancuso,* 653 F.Supp. at 791 (citations omitted). The decibel provision clearly falls within this latter category.

The remaining provisions cannot be viewed as being content-neutral restrictions, however. These provisions proscribe noises that are, inter alia, "annoying" or "unnecessary." NEWPORT, R.I., NOISE ABATEMFNT ORDINANCES, § 8.12.040. These provisions invite law enforcement and others to make a determination as to whether the ordinance has been violated on purely subjective, content-based criteria.

 In order to survive a constitutional challenge, a content-based restriction must be (1) necessary to serve a compelling state interest and, (2) narrowly drawn to achieve that end. See *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 736 (1st Cir.), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). While it is true that a municipality has " 'a substantial interest in protecting its citizens from unwelcome noise,' " *Ward v. Rock Against Racism,* 491 U.S. 781, 796, 109 S.Ct. 2746, 2756, 105 L.Ed.2d 661 (1989) (quoting *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. at 806, 104 S.Ct. at 2129), and that this interest is not limited to protecting the " 'well-being, tranquility, and privacy of the home,' " *id.* (quoting *Frisby v. Schultz,* 487 U.S. 474, 484, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988)), but also extends to traditionally public fora such as city streets and parks, *see id,* it cannot be said that the three provisions in question are necessary to serve this interest or are narrowly drawn to do so. Indeed, this goal can easily be met through the use of content-neutral restrictions similar to the decibel provision.

assemble, and to petition the Government for a

### III. CONCLUSION

For the reasons discussed above, this Court finds that certain portions of Newport's Noise Abatement Ordinance are vague and overbroad. As such, those portions of the ordinance that proscribe

the making, creation or permitting of any unreasonably loud, disturbing or unnecessary noise; or the making, creating or permitting of any noise of such character, intensity or duration as to be detrimental to the life, health or welfare of any individual, or which either steadily or intermittently annoys, disturbs, injures or endangers the comfort, repose, peace or safety of any individual[,]

are declared to be unconstitutional, and the City of Newport is hereby enjoined from enforcing them. NEWPORT, R.I., NOISE ABATEMENT ORDINANCES, § 8.12.040. This declaration and injunction does not extend to that part of the ordinance which proscribes "any sound which exceeds the dBA level for such sound set out in this chapter." NEWPORT, R.I., NOISE ABATEMENT ORDINANCES, § 8.12.040.

SO ORDERED:

redress of grievances." U.S. CONST. amend. I.